832 So.2d 188 (2002)
Nicholas J. SCHUR and Lisa S. Schur, etc., Appellant,
v.
FLORIDA BIRTH-RELATED NEUROLOGICAL, etc., et al., Appellee.
No. 1D01-4197.
District Court of Appeal of Florida, First District.
November 25, 2002.
Rehearing Denied December 17, 2002.
*189 C. Rufus Pennington, III, of Margol & Pennington, P.A., Jacksonville, for Appellant.
Wilbur E. Brewton, General Counsel and Kelly B. Plante, of Brewton, Plante & Plante, P.A., Tallahassee for Neurological Injury Compensation Association; Daniel M. Eisel, and Kelly B. Mathis, of Gobelman, Love, Gavin, Blazs & Mathis, Jacksonville for Marijane Q. Boyd, M.D. and Beaches Obstetrical and Gynecological Practice, for Appellee.
LEWIS, J.
Nicholas and Lisa Schur, appellants, challenge the Administrative Law Judge's ("ALJ") conclusion that Dr. Marijane Boyd's failure to provide the required notice under section 766.316, Florida Statutes (Supp.1998), was harmless. Section 766.316 requires participating physicians in the Florida Birth-Related Neurological Injury Compensation Plan ("NICA plan") to provide notice to their obstetrical patients of their participation in such. Participating *190 physicians in the NICA plan enjoy immunity from civil liability for those birth-related neurological injuries that are covered under the NICA plan. Accordingly, because Dr. Boyd failed to give the statutorily required notice and such failure was not harmless, we reverse. As this issue is dispositive of the appeal, we decline to address the remaining issues on appeal.
As Dr. Randolph had delivered Lisa Schur's first child by cesarean section, Mrs. Schur began prenatal care for her second child with Dr. Randolph. Dr. Randolph was employed with North Florida Obstetrical and Gynecological Associates. During Mrs. Schur's 26th week, Dr. Randolph decided to stop delivering babies. Mrs. Schur then visited North Florida Obstetrical and Gynecological Associates, Beaches Division ("North Florida OB/ GYN"), a division of Dr. Randolph's group. North Florida OB/GYN had a "Management Services Agreement" with Beaches Obstetrical and Gynecological Practice ("Beaches OB/GYN"). That is, coverage and care for patients were shared between North Florida OB/GYN and Beaches OB/ GYN. Dr. Boyd, an employee of Beaches OB/GYN, shared an office with Drs. Moorhead and Schroeder, who were employees of North Florida OB/GYN. Dr. Boyd began providing Mrs. Schur with prenatal care on June 15, 1998, and suggested a vaginal birth despite Mrs. Schur's previous cesarean section.
On September 20, 1998, at 2:20 a.m., Lisa Schur was admitted to Baptist Medical Center at full term and in labor. Upon Mrs. Schur's arrival at the hospital, the nursing staff notified Dr. Boyd by telephone. However, Dr. Boyd did not go to the hospital at that time. The hospital nursing staff paged Dr. Boyd at 4:50 a.m. and again at 5:10 a.m. because signs of fetal distress developed and there was no obstetrician present who could perform an emergency cesarean section. Dr. Boyd did not arrive at the hospital until 5:24 a.m. Upon performing a cesarean section, Dr. Boyd found that a uterine rupture had occurred along the previous cesarean incision and that the infant was in the abdominal cavity. The infant was delivered at 5:36 a.m. Because of placental abruption and uterine rupture during the labor, the infant suffered oxygen deprivation for more than four minutes, resulting in marked brain damage. The infant, Nicholas Erwin Schur, died four days later.
Appellants filed a complaint in circuit court for wrongful death, alleging that Dr. Boyd, Baptist Medical Center, Beaches OB/GYN, and North Florida OB/GYN willfully and wantonly disregarded the safety of Mrs. Schur and her infant. They averred that Dr. Boyd wrongfully advised Mrs. Schur to undertake a vaginal birth and wrongfully counseled her regarding the risks of such given her previous cesarean section. Appellants also alleged that the defendants wrongfully admitted Mrs. Schur to the hospital knowing that the hospital and staff did not have the capacity to provide immediate surgical delivery and that the defendants failed to perform an appropriate and timely cesarean section. The defendants moved to abate the civil action pending the administrative determination of the claim under the NICA plan, codified in sections 766.301-766.316, Florida Statutes. The trial court granted the motion on November 17, 2000.
On December 13, 2000, appellants filed a petition for determination of benefits with the Florida Birth-Related Neurological Injury Compensation Association ("NICA"), which governs the NICA plan. NICA requested an administrative hearing. Baptist Medical Center, Dr. Boyd, Beaches OB/GYN, and North Florida OB/GYN moved to intervene in the administrative *191 proceeding, which the ALJ granted. Subsequently, appellants settled their claim with Baptist Medical Center. Thereafter, appellants raised the issue of Dr. Boyd's failure to provide notice of her participation in the NICA plan.
At the final hearing, Mrs. Schur testified that no one had explained to her that Dr. Boyd was a participating physician in the NICA plan. Mrs. Schur stated that she did not receive the required NICA plan notice from Dr. Randolph. However, Mrs. Schur wrote "Received at Dr. Randolph's" on the notice indicating that North Florida OB/GYN participated in the NICA plan.
Dr. Moorhead testified at the hearing that she, Dr. Schroeder and Dr. Boyd all shared patients in order to become familiar with them before delivery. She stated that no distinction was made to the patients between Beaches OB/GYN and North Florida OB/GYN. Dr. Moorhead also stated that North Florida OB/GYN provided all the necessary paperwork to patients, including NICA forms. Dr. Moorhead further testified that Mrs. Schur's medical records included a notation next to NICA coverage, indicating that coverage was checked with Dr. Randolph.
Dr. Boyd did not attend the final hearing. However, the parties stipulated that Dr. Boyd remained employed with Beaches OB/GYN until October 1, 1999, at which time she became employed with North Florida OB/GYN. The parties also agreed that on September 20, 1998, the date that Nicholas Erwin Schur was born, Dr. Boyd was a participating obstetrician in the NICA plan. Also at this time, Dr. Boyd was employed by Beaches OB/GYN and not North Florida OB/GYN.
The ALJ agreed with NICA that appellant's claim was compensable under the NICA plan because Nicholas suffered a "birth-related neurological injury" and birth services were provided by a participating physician. The ALJ found that Mrs. Schur was provided timely notice that physicians associated with North Florida OB/GYN were participating physicians in the NICA plan. Even though the ALJ found that Dr. Boyd failed to provide separate notice, the ALJ found such failure to be harmless. The ALJ further determined that separate notice was not necessary as Drs. Moorhead, Schroeder, and Boyd overtly practiced as North Florida OB/GYN. The ALJ determined that because the doctors rotated patients, it was strictly a matter of chance as to which physician would deliver Mrs. Schur's child.
This Court reviews an ALJ's interpretation of the NICA plan de novo. See Nagy v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 813 So.2d 155, 159 (Fla. 4th DCA 2002). An ALJ's final order is reversible on appeal where its interpretation of the law is clearly erroneous or its findings of fact are not supported by competent, substantial evidence. § 120.68(7)(b), (d), Fla. Stat. (1997); see also Nagy, 813 So.2d at 159.
The NICA plan was designed by the Legislature "to provide compensation, on a no-fault basis, for a limited class of catastrophic [birth-related neurological] injuries that result in unusually high costs for custodial care and rehabilitation." § 766.301(2), Fla. Stat. (1997); § 766.303(1), Fla. Stat. (1997). Section 766.316 provides, in pertinent part, that each hospital and participating physician under the NICA plan must:
provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under *192 the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met.
As a condition precedent to invoking the NICA plan as appellants' exclusive remedy, Dr. Boyd must show that proper pre-delivery notice of her participation in the NICA plan was given. See Galen of Fla., Inc. v. Braniff, 696 So.2d 308, 309 (Fla. 1997); Bd. of Regents v. Athey, 694 So.2d 46, 49 (Fla. 1st DCA 1997), aff'd, 699 So.2d 1350 (Fla.1997). The purpose of the notice is to give an obstetrical patient an opportunity to make an informed choice between using a participating obstetrician or using one who is not a participant in the NICA plan, thereby reserving her civil remedies. See Braniff, 696 So.2d at 309-310.
This Court in Athey established a bright-line rule requiring pre-delivery notice from each health care provider in order to preserve his or her NICA plan immunity. This Court held that "health care providers who have a reasonable opportunity to give notice and fail to give pre-delivery notice under section 766.316, will lose their NICA exclusivity regardless of whether the circumstances precluded the patient making an effective choice of provider at the time the notice was provided." Athey, 694 So.2d at 50-51.
The ALJ correctly found that North Florida OB/GYN and its physicians provided the required NICA plan notice. However, the ALJ erred in concluding that Dr. Boyd's failure to provide any notice of NICA plan participation was harmless. Under the bright-line rule in Athey, Dr. Boyd was required to provide notice of her participation regardless of whether Mrs. Schur was aware of the Management Services Agreement between North Florida OB/GYN and Beaches OB/GYN, which provided for Dr. Boyd to share patients and services with Drs. Moorhead and Schroeder. Although Dr. Boyd later became an employee of North Florida OB/ GYN, at the time of Nicholas' birth, she was employed by Beaches OB/GYN and did not fall under the North Florida OB/ GYN umbrella.
Furthermore, section 766.316 requires "[e]ach hospital with a participating physician on its staff and each participating physician" to provide notice. (emphasis added). The plain language of this section shows an intention that the NICA plan immunizes a physician only when he or she provides notice. See M.W. v. Davis, 756 So.2d 90, 101 (Fla.2000) (stating that statute should be given its plain meaning where the statutory language is clear and unambiguous); Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826, 830 (Fla. 1st DCA 1996). As Dr. Boyd was not employed by North Florida OB/GYN, she was required to give separate notice of her participation in the NICA plan, which she failed to do. Because the Legislature, in clear and unambiguous terms, required that each participating physician must provide notice of participation in the NICA plan, we conclude that Dr. Boyd's failure to give such notice was not harmless. Therefore, Dr. Boyd was not entitled to immunity under the NICA plan. Accordingly, we reverse.
REVERSED and REMANDED for further proceedings.
BROWNING and POLSTON, JJ., CONCUR.