WOLF, J.
Appellant, Ralph Rayburn, challenges a final summary judgment in favor of Orange Park Medical Center (OPMC) in a medical malpractice action. The summary judgment was granted based on the application of section 240.215, Florida Statutes (1999), which immunized hospitals from vicarious liability as a result of actions of employees or agents of the Board of Regents (BOR).[1] We find that the notice provided to patients by OPMC failed to comply with the requirements of the statute. OPMC was, therefore, not entitled to the benefit of the statute. We reverse the *986 summary judgment in favor of OPMC and remand to the trial court for further proceedings.
Appellant filed a complaint for medical malpractice against OPMC and other defendants. In the complaint, appellant alleges that OPMC was vicariously liable for the negligence of Dr. David A. Caro, the emergency room physician who first saw appellant on arrival on April 11, 1999. Rayburn alleged specifically that Dr. Caro was an employee or agent of OPMC. Alternatively, he alleged that Dr. Caro was an employee of the Board of Regents or of the University of Florida. Appellant did not allege in his complaint any independent acts of negligence by OPMC.
The hospital asserts that appellant was given a form entitled “Orange Park Medical Center Conditions of Admission” at the time of his admission into the emergency room. The alleged malpractice occurred at that time and during a subsequent admission at which it is alleged that appellant’s mother was given the same form.
The admission form is critical because the trial court granted summary judgment on the basis of section 240.215, Florida Statutes (1999), which in pertinent part stated as follows:
240.215. Payment of costs of civil action against employees or members of the Board of Regents.
[[Image here]]
(2) An employee or agent under the right of control of the Board of Regents who ... renders medical care or treatment at any hospital ... with which the Board of Regents maintains an affiliation agreement ... shall not be deemed to be an agent of any person other than the Board of Regents in any civil action resulting from any act or omission of the employee or agent while rendering said medical care or treatment. For this subsection to apply, the patient shall be provided separate written conspicuous notice by the Board of Regents or by the hospital or health care facility, and shall acknowledge receipt of this notice, in writing, unless impractical by reason of an emergency, either personally or through another person authorized to give consent for him or her, that he or she will receive care provided by Board of Regents’ employees and liability, if any, that may arise from that care is limited as provided by law....
[[Image here]]
(5) Failure of the Board of Regents or an affiliated health care provider to do any act authorized by this section shall not constitute a cause of action against the Board of Regents, or an affiliated health care provider, or any of their members, officers, or employees.
(Emphasis added.)
This section has not previously been interpreted. However, under the clear and plain language of the statute, for a hospital to be immune from a vicarious liability claim (i.e., a finding that the BOR employee is not its agent) the following conditions precedent were required to be satisfied:
1. Notice provided to the patient by the hospital or BOR which was separate, unitben, and conspicuous; warned the patient that he or she would receive care provided by Board of Regents’ employees; and stated that liability, if any, which might arise from that care was limited as provided by law.
2. Acknowledgment of this notice, made in writing (unless a writing is impractical because of an emergency) by the patient themselves or by another person authorized to give consent for the patient.
The admission form provided to appellant and his mother was the following:
*987 Orange Park Medical Center
Conditions of Admission
CONSENT FOR TREATMENT: The patient’s care is under the control of his/her attending physicians, and the undersigned consents to any x-ray examination, laboratory procedure, anesthesia, medical or surgical treatment or hospital services considered necessary or advisable in the judgement of and rendered under the general and special instructions of the physicians. (Separate informed consent will be obtained for all invasive procedures). I recognize that all physicians furnishing services are not employees nor agents of the hospital. I am aware that the practice of medicine and surgery is not an exact science and I acknowledge that no guarantees have been made to me as to the result of treatments or examinations performed in this hospital by the physicians of their assistants/designees.
RELEASE OF INFORMATION: I authorize Orange Park Medical Center to release any and all information regarding my diagnosis(es) and treatment as may be required by Federal/State Statute and/or regulatory agencies and as may be necessary for payment of my hospital and physicians’ claims for this hospitalization. I hereby release the above named hospital and aforementioned physicians from any legal liability that may arise from the release of said information.
PERSONAL VALUABLES: It is recommended that valuables and personal items such as glasses, hearing aids, dentures, clothing, money, etc., be sent home with a family member or deposited in the hospital’s safe. I understand that by choosing to keep them in my possession while in the hospital as a patient, I hereby release Orange Park Medical Center and its employees from any liability that may be incurred from loss or damage.
SPECIMEN/TISSUE AND STUDENT CARE RELEASE: I understand there may be students participating in my care and that these students are under the supervision of their instructors and/or the hospital’s professional staff. These students are affiliated with the local community colleges and/or county vocational training agencies and are not employees or agents of this hospital. I also authorize this hospital or members of its attending staff to retain, preserve and use for scientific or teaching purposes, or dispose of at their convenience and in their sole discretion, any specimens of tissues removed from my body, and I waive any interest I may have or have had in such specimens or tissues.
NOTICE OF LIMITED LIABILITY AS REQUIRED BY SECTION 240.215, FLORIDA STATUTES: Some of the physicians furnishing services within this hospital are employees/agents of the Florida Board of Regents. Pursuant to § 768.28, any liability that may arise from their care/treatment is limited to $100,000 per claim or judgement by any one person and to $200,000 for all claims or judgements arising out of the same incident or occurrence.
ASSIGNMENT OF INSURANCE BENEFITS: I hereby authorize direct payment to the hospital of any benefits provided under any Health Care plan, medical expense policy, or motor vehicle insurance, otherwise due or payable to me or on my behalf, provided such amount shall not exceed the hospital’s charges. In the event I am entitled to benefits payable for physician services, these benefits are hereby assigned to the physicians, who will bill separately for their services. I understand that I am ultimately personally responsible to *988 this hospital and my treating physicians for charges not paid by an insurance company unless the hospital and physicians are otherwise contracted.
I FURTHER UNDERSTAND THAT IF I HAVE REASON TO BELIEVE THIS FACILITY IS NOT IN COMPLIANCE WITH THE STATE’S ADVANCE DIRECTIVES REGULATIONS, I CAN FILE A COMPLAINT WITH THE AGENCY FOR HEALTH CARE ADMINISTRATION.
We find the statutory notice provided by the form is neither separate nor conspicuous as required by section 240.215.
Section 240.215 limited the common law doctrine of agency and apparent agency with regard to physicians who were employed by the Florida Board of Regents and worked in hospitals. Statutes altering the common law must be narrowly construed. Allstate Ins. Co. v. Rudnick, 761 So.2d 289, 293 (Fla.2000). Thus, failure to give the appropriate statutory notice would result in waiver of the immunity provided by statute. In Schur v. Florida Birth-Related Neurological, 832 So.2d 188 (Fla. 1st DCA 2002), this court addressed the issue of when a notice requirement is a condition precedent to limiting medical malpractice liability under the Neurological Injury Compensation Act (NICA). There, this court held that the specific notice requirements of section 766.316, Florida Statutes (1997), were not satisfied, and therefore, the doctor was not entitled to immunity. There this court stated,
[S]ection 766.316 requires “[e]ach hospital with a participating physician on its staff and each participating physician” to provide notice, (emphasis added). The plain language of this section shows an intention that the NICA plan immunizes a physician only when he or she provides notice. See M.W. v. Davis, 756 So.2d 90, 101 (Fla.2000) (stating that statute should be given its plain meaning where the statutory language is clear and unambiguous); Tallahassee Mem’l Reg’l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826, 830 (Fla. 1st DCA 1996). As Dr. Boyd was not employed by North Florida OB/GYN, she was required to give separate notice of her participation in the NICA plan, which she failed to do. Because the Legislature, in clear and unambiguous terms, required that each participating physician must provide notice of participation in the NICA plan, we conclude that Dr. Boyd’s failure to give such notice was not harmless. Therefore, Dr. Boyd was not entitled to immunity under the NICA plan. Accordingly, we reverse.
Id. at 192 (Emphasis in original).
Section 766.316 as interpreted in Schur establishes that proper notice be given as a condition precedent to invoking immunity. “The purpose of the notice is to give [a] patient an opportunity to make an informed choice between using a participating [physician] or using one who is not a [plan] participant ... thereby reserving [the patient’s] civil remedies.” Schur, 832 So.2d at 192. The purpose of section 240.215 was similar. Thus section 240.215, like section 766.316, requires proper notice as a condition precedent to invoke immunity-
Under section 240.215, the notice must be separate, written, and conspicuous. However, section 240.215 fails to define the terms “separate” and “conspicuous.” When a statute fails to define a term, “the court may resort to a dictionary definition to determine the 'plain and ordinary meaning’ of the statutory language.” Allstate, 761 So.2d at 292. The American Heritage Dictionary defines “separate” as “[t]o set or keep apart; disunite .... [t]o differentiate or discriminate between; distin *989 guish.” American Heritage Dictionary 1118 (2d College ed. 1991). The American Heritage Dictionary defines “conspicuous” as “[e]asy to notice; obvious.... Attracting attention by being unusual or remarkable.” Id. at 314. The notice in the instant case is included in one of six identically laid out paragraphs; the paragraphs are equally spaced; there is no border; nothing distinguishes one paragraph from any other on the page. There appears to be nothing in the admission form to make it separate or conspicuous.
The legislative intent to assure that patients are aware of the status of the medical personnel who are treating them has not been met, and we are required to find that OPMC is not entitled to the benefits of the statutory immunity.[2] The summary judgment is reversed.
BOOTH and KAHN, JJ., concur.

. Section 240.215 was repealed effective January 7, 2003. Ch.2000-321, § 3(7), at 3545, Laws of Fla.

. We are not unmindful of the hospital’s arguments about the difficulty of complying with the statutory requirements in emergency situations. Those arguments are more properly made to the legislature.