916 So.2d 865 (2005)
UNIVERSITY OF MIAMI d/b/a University of Miami School of Medicine, a Corporation, and Florida Birth-Related Neurological Injury Compensation Association, Appellants,
v.
Juanita RUIZ and Miguel Angel Ruiz, as parents and natural guardians of Michael A. Ruiz, a minor, et al., Appellees.
No. 3D04-2763.
District Court of Appeal of Florida, Third District.
November 2, 2005.
Rehearing Denied December 23, 2005.
*867 Fowler White Burnett, and June G. Hoffman and Marc J. Schleier, Miami; Roetzel & Andress, and Wilbur E. Brewton and Kelly B. Plante, Tallahassee, for appellants.
Rossman, Baumberger, Reboso & Spier, P.A. and Lincoln J. Connolly, Miami, for appellees.
Before RAMIREZ, SUAREZ, and CORTIÑAS, JJ.
CORTIÑAS, Judge.
Juanita and Miguel Ruiz were expectant parents who could not afford private medical care. On July 22, 1998, Mr. and Mrs. Ruiz pre-registered at Jackson North Maternity Center ("hospital"), which was owned by the Public Health Trust of Dade County ("Trust"). The hospital displayed a sign near the front entrance stating that it was a University of Miami ("University") facility. At that time, Mrs. Ruiz provided her personal and financial information to a health service representative and received three pamphlets, including a Florida Birth-Related Neurological Injury Compensation Plan ("NICA Plan") brochure. One of the documents that Mrs. Ruiz signed was a form acknowledging her receipt of the NICA Plan brochure.
This NICA Plan brochure was stapled in the middle of a group of three pamphlets. The front of the brochure did not contain any reference to the NICA Plan. The hospital representative did not discuss the brochure with Mrs. Ruiz or advise her of its legal significance. Neither the brochure nor the acknowledgment form indicated that any of the physicians on the staff were participants in the NICA Plan.
Three weeks later, Mrs. Ruiz arrived at the hospital in labor at approximately 4:00 p.m. She came under the care of Dr. Norris, a University professor, who also served as a medical director and an attending physician at the hospital. Mrs. Ruiz was examined by a resident physician, who was supervised by Dr. Norris. The resident physician noted, among other things, that Mrs. Ruiz' membranes ruptured spontaneously prior to arriving at the hospital and that she had regular uterine contractions every three minutes. At 7:00 p.m., Dr. Barker, also employed by the University, assumed Dr. Norris' responsibilities. Neither doctor advised Mrs. Ruiz of their status as participants in the NICA Plan and never did so previously.
On August 14, 1998, at approximately 6:01 a.m., the baby was delivered by caesarean section and was born with significant and permanent brain damage caused, as the court found, by "oxygen deprivation occurring in the course of labor, delivery, or resuscitation in the immediate postdelivery period in the hospital which rendered the baby permanently and substantially mentally and physically impaired."
The Ruiz family filed a malpractice action and specifically alleged that the baby suffered from fetal distress and perinatal asphyxia due to negligence during Mrs. Ruiz' labor. The Ruiz family also alleged that proper NICA Plan notice was not given by the University physicians or the hospital as required by section 766.316, Florida Statutes (1998).
In response, the hospital and the University filed motions to dismiss or abate, contending that the claim was governed by NICA, sections 766.301-.316, Florida Statutes (1998), and that the Ruiz family *868 should bring the claim under NICA.[1] The trial court denied their motion and this court granted certiorari and quashed the trial court's ruling, finding that the Administrative Law Judge ("ALJ"), and not the trial court, should make the determination of whether or not a health care provider satisfied the notice requirement of the NICA Plan. See Univ. of Miami v. M.A., 793 So.2d 999 (Fla. 3d DCA 2001).
The Ruiz family filed an amended petition with the Division of Administrative Hearings ("DOAH") for compensation under the NICA Plan. The Florida Birth-Related Neurological Injury Compensation Association ("Association") responded by agreeing that the claim was compensable. On September 28, 2004, the ALJ issued a final order approving the claim for compensation, and finding that the hospital complied with the NICA notice provisions but the University's physicians did not. The Association, and the intervenor, University of Miami, d/b/a University of Miami School of Medicine (collectively "appellants"), appeal from a final order of DOAH in favor of the Ruiz family ("appellees"). We affirm.
We review the ALJ's interpretation of the NICA Plan de novo. See Nagy v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 813 So.2d 155, 159 (Fla. 4th DCA 2002). However, this court will not disturb the ALJ's findings of fact unless they are not supported by competent substantial evidence. See § 120.68(7), Fla. Stat. (1998); Id.
The issue on appeal is whether the University physicians properly complied with the notice requirement pursuant to section 766.316. The legislative goal behind enacting sections 766.301-.316 was to provide a no-fault alternative remedy for a "limited class of catastrophic [birth-related neurological] injuries that result in unusually high costs for custodial care and rehabilitation." See § 766.301(2), Fla. Stat. (1998). Physicians participating in the NICA Plan enjoy immunity from civil liability for covered neurological injuries. Schur v. Fla. Birth-Related Neurological, 832 So.2d 188, 189 (2002). However, as a condition precedent to invoking NICA Plan immunity, participating physicians must demonstrate that proper pre-delivery notice was given to their patients. Galen of Fla., Inc. v. Braniff, 696 So.2d 308, 309 (Fla.1997); Bd. of Regents v. Athey, 694 So.2d 46, 49 (Fla. 1st DCA), aff'd 699 So.2d 1350 (Fla.1997); Schur, 832 So.2d at 192.
Section 766.316 provides, in relevant part:
Notice to obstetrical patients of participation in the plan.  Each hospital with a participating physician on its staff and each participating physician, other than residents, ... under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan.... Notice need not be given to a patient when the patient has an emergency medical *869 condition defined in [section 395.002(9)(b), Florida Statutes, 1998] or when notice is not practicable.
§ 766.316, Fla. Stat. (1998). The purpose of the notice requirement is to provide patients with an opportunity to make an informed choice between using an obstetrician who participates in the NICA Plan and using one who does not, thereby preserving civil remedies against the obstetrician. See Galen, 696 So.2d at 309-310. A physician's failure to provide such notice results in the preclusion of the NICA Plan's exclusive administrative remedy provision and allows the patient to pursue civil remedies. Id. at 310. However, there are two separate and distinct exceptions to NICA's notice requirement: situations when the patient presents in an emergency medical condition or when notice is not practicable. See § 766.316, Fla. Stat. (1998).[2]
Appellants argue that, since the ALJ properly concluded that Mrs. Ruiz arrived at the hospital in an emergency medical condition[3] on August 13, 1998, the ALJ should have found that the physicians were excused from the notice requirement. Appellants also argue that, once the ALJ properly determined the existence of an emergency medical condition, further inquiry into whether providing notice was practicable at an earlier stage was inappropriate because it contravened the plain language of section 766.316.
Appellees contend that, even though it is possible that Mrs. Ruiz appeared in an emergency medical condition on August 13, 1998, the physicians had ample opportunity to provide notice prior to that date. They argue that the physicians had a reasonable opportunity and were required to provide notice to Mrs. Ruiz during her pre-registration on July 22, 1998 and during the three weeks after pre-registration leading up to her arrival at the hospital in active labor on August 13, 1998. We agree.
We find that the University physicians failed to meet their burden of showing that the NICA Plan's notice requirement was satisfied. See Tabb ex rel. Tabb v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 880 So.2d 1253, 1260 (Fla. 1st DCA 2004)(citing Galen, 696 So.2d at 311). Dr. Norris, one of the University's treating physicians, testified that, although he was aware that he had a separate and independent responsibility under section 766.316 to provide notice, it was his belief that the hospital's provision of notice at pre-registration satisfied his statutory notice obligation. However, the hospital's NICA Plan notice did not indicate that it was also given on behalf of any physician associated with the hospital or that any physician in the hospital was a NICA Plan participant. Therefore, the ALJ correctly found that the hospital's notice was inadequate to satisfy the University physicians' independent obligation to provide notice.
Although appellants admit that the record lacks evidence of impracticability, they nonetheless contend that the University physicians did not have a reasonable opportunity *870 to provide notice to Mrs. Ruiz. In the alternative, appellants contend that, even if a reasonable opportunity had existed, the provision of notice was excused under the "emergency medical condition" exception in the statute. See § 766.316, Fla. Stat. (1998).
Appellants rely on Orlando Regional Healthcare System, Inc. v. Alexander, 909 So.2d 582 (Fla. 5th DCA 2005) for authority, wherein the Fifth District concluded that a patient's previous visits to the hospital during her pregnancy did not negate the statutory exception which applied to her final visit, when she arrived in an emergency medical condition. See id. at 586. We expressly reject and disagree with this holding. Although we concur that the provision of notice is excused when the patient presents in an emergency medical condition, we find that, if a reasonable opportunity existed to provide notice prior to the onset of the emergency medical condition, the participating health care providers' failure to do so will not be excused and the participating health care providers will lose their NICA Plan exclusivity. We cannot conceive that the Legislature intended to discharge health care providers from the obligation to provide notice when the opportunity was previously available to them and, as such, they were legally required to provide notice at that time.
Accordingly, we certify direct conflict with Alexander pursuant to article V, section 3(b)(4) of the Florida Constitution, and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(vi).[4]
In the instant case, notwithstanding the absence of a prior professional relationship between the University physicians and Mrs. Ruiz, the physicians had a reasonable opportunity to furnish notice at pre-registration or during the weeks after pre-registration but prior to the onset of active labor. The record indicates that all of the University physicians participated in the NICA Plan and that their services at the hospital were limited to maternity treatment at the onset of labor. There is absolutely no record evidence that it was impracticable for Dr. Norris or Dr. Barker to give the NICA Plan notice to Mrs. Ruiz. By pre-registering three weeks ahead of her eventual maternity admission, Mrs. Ruiz clearly manifested an intent to deliver at that hospital. In light of the fact that all of the University's physicians participated in the NICA Plan, and the University's awareness of the circumstances under which maternity patients typically arrived at the hospital, we find that pre-registration provided a reasonable opportunity for the University physicians to furnish the NICA Plan notice on July 22, 1998. From July 22, 1998 until the advent of Mrs. Ruiz' emergency medical condition, the NICA statute required proper notice to be given. The patient's hospital visit three weeks later, admittedly on an emergency basis, did not negate the physicians' earlier statutory duty to provide the NICA Plan notice.
We affirm and certify direct conflict with the Fifth District Court of Appeal in Orlando Regional Healthcare System, Inc. v. Alexander, 909 So.2d 582 (Fla. 5th DCA 2005).
Affirmed and direct conflict certified.
NOTES
[1] Sections 766.301-.316, Florida Statutes (1998) establish NICA, a limited no-fault administrative compensation system for some birth-related neurological injuries pursuant to section 766.302(2). A proceeding under the Act forecloses a tort action unless the injury is found to be non-compensable according to section 766.304, and it allows a form of immunity from suit for participating providers in some circumstances under section 766.303(2). See Romine v. Fla. Birth Related Neurological Injury Comp. Ass'n, 842 So.2d 148, 151-52 (Fla. 5th DCA 2003).
[2] Section 766.316 was amended in 1998, prior to the baby's birth, to include the two exceptions to the notice requirement.
[3] An emergency medical condition is defined in section 395.002(9)(b), Florida Statutes (1998), which states, in relevant part:

(9) "Emergency medical condition" means:
. . .
(b) With respect to a pregnant woman:
1. That there is inadequate time to effect safe transfer to another hospital prior to delivery;
2. That a transfer may pose a threat to the health and safety of the patient or fetus; or
3. That there is evidence of the onset of persistence of uterine contractions or rupture of the membranes.
[4] We note the presence of a possible distinction with Alexander based on the fact that Alexander's three prior hospital visits were to treat a possible emergency medical condition as opposed to a pre-registration hospital visit. The latter, as occurred in this case, clearly placed the hospital and the participating physicians on notice of the patient's express intent to deliver at that hospital.