ORFINGER, J.
Michelle and Russell Matteini, on behalf of and as parents and natural guardians of Sierra Matteini, a minor, appeal a final administrative order denying their petition for benefits under the Florida Birth-Related Neurological Injury Compensation Plan (“the Plan”), sections 766.301-.316, Florida Statutes (2006). In a final order, the administrative law judge (“ALJ”) determined that Sierra had not suffered a “birth-related neurological injury,” as the proof failed to “support the conclusion that, more likely than not, Sierra’s neurological impairment was the result of 'a brain or spinal cord injury occurring in the course of labor, delivery or resuscitation in the immediate postdelivery period in the hospital, or that Sierra was permanently and substantially impaired.” On appeal, the Matteinis dispute the ALJ’s findings, contending that they are not supported by competent, substantial evidence. Having carefully reviewed the record, we affirm.
The physician providing obstetrical services at Sierra’s birth was a “participating physicián” in the Plan, as defined by section 776.302(7), Florida Statutes. Believing that Sierra had been injured during delivery, the Matteinis filed a petition with the Division of Administrative Hearings (“DOAH”) for compensation under the *1094 Plan, alleging that Sierra had suffered brain damage as the result of a traumatic delivery. The Matteinis requested relief according to the provisions of the Plan as well as reasonable attorney’s fees.
DOAH served Florida Birth-Related Neurological Injury Compensation Association (“NICA”) with a copy of the petition. NICA responded, reporting that it had retained two medical experts to opine whether Sierra’s claim was compensable under the Plan. Based on its experts’ opinions, NICA “determined that the instant claim [was] not compensable as the injury [did] not meet the definition of a ‘birth-related neurological injury’ as defined in Section 766.302(2), Florida Statutes, which specifically requires that the injury render ‘the infant permanently and substantially mentally and physically impaired.’ ’’ A hearing was then held to determine whether the Matteinis’ claim was compensable. The question before the ALJ was whether it was a “birth-related neurological injury,” as defined by the Plan.
The Plan was established by the Legislature to provide no-fault compensation for birth-related neurological injuries to infants. See §§ 766.301-.316, Fla. Stat. (2005); Fla. Birth-Related Neurological Injury Comp. Ass’n v. McKaughan, 668 So.2d 974, 978 (Fla.1996). Under the Plan, a “birth-related neurological injury” is an injury to the brain or spinal cord of an infant caused by oxygen deprivation or mechanical injury during labor or delivery, which renders the infant both “permanently and substantially mentally and physically impaired.” § 766.302(2), Fla. Stat. (2005). If the infant’s injury satisfies this statutory definition, then the infant, qualifies for financial benefits. Id.; see §§ 766.309, 766.31, Fla. Stat. (2005).
As required by the statutory scheme, the ALJ was required to determine whether Sierra’s brain injury was the likely cause of her current impairments and whether Sierra is substantially and permanently physically and mentally impaired. On this issue, NICA argued below and on appeal that Sierra’s impairments were not based on the injury that she sustained at birth, and, regardless of the cause of her impairments, Sierra is not permanently and substantially mentally and physically impaired. The Matteinis take a contrary view, arguing that Sierra’s brain injury caused her current impairments and renders her permanently and substantially mentally and physically impaired.
After the hearing, the ALJ issued a detailed final order, explaining his evaluation of the evidence and denying the Mat-teinis’ claim for compensation under the Plan. The ALJ concluded that the Mat-teinis’ claim was not compensable because Sierra had not suffered a “birth-related neurological injury.” In rendering this finding, the ALJ resolved the conflicting evidence against the Matteinis.
This Court’s review of the ALJ’s final order is governed by section 120.68, Florida Statutes (2005). See Legal Envtl. Assistance Found., Inc. v. Clark, 668 So.2d 982, 986 (Fla.1996). . “A determination of the administrative law judge as to the qu$lification of the claim for purposes of compensability under s. 766.309 ... shall be conclusive and binding as to all questions of fact.” § 766.311(1), Fla. Stat. (2005). An ALJ’s findings of fact are reversible on appeal when they are not supported by competent, substantial evidence in the record or where the agency’s interpretation of the law is clearly erroneous. See § 120.68(7) & (10), Fla. Stat. (2005); Carreras v. Fla. Birth-Related Neurological Injury Comp. Ass’n, 665 So.2d 1082, 1084 (Fla. 3d DCA 1995). Conversely, an ALJ’s interpretation of the law is reviewed de novo. See Schur v. Fla. Birth-Related Neurological, 832 So.2d 188, 191 (Fla. 1st *1095 DCA 2002); Nagy v. Fla. Birthr-Related Neurological Injury Comp. Ass’n, 813 So.2d 155, 159 (Fla. 4th DCA 2002); Fluet v. Fla. Birthr-Related Neurological Injury Comp. Ass’n, 788 So.2d 1010 (Fla. 2d DCA 2001).
To grant the Matteinis relief, we would be required to reweigh the evidence considered by the ALJ, who determined that Sierra did not suffer a “birth-related neurological injury.” Although the Matteinis’ expert, Dr. Trumble, testified that the contusion to Sierra’s left temporal lobe of her brain was the cause of her speech delay, and that it was permanent, he was unable to opine whether this injury was “substantial,” stating that “‘substantial’ gets into the subjective realm that I would defer to ... I guess you’d would make that decision, Judge. I don’t know who makes that decision. But I would defer to somebody else. If this were my child and she was having speech issues, it would be substantial to me.”
With respect to the specific issue of whether Sierra’s speech delay was a physical impairment, Dr. Trumble opined that Sierra “has a one centimeter left mid-temporal area of encephalomalacia ... [and that] specific anomaly within the brain ... would be ... most likely Sierra’s speech delay was related to her speech impairment.” However, he admitted that he did not “see any motor abnormalities, if that is what [is meant] by a physical impairment.” Under the Plan, a “physical impairment” relates to the infant’s impairment of his “motor abnormalities” or “physical functions,” which along with the brain injury, significantly affects the infant’s mental capabilities so that the infant will not be able to translate his cognitive capabilities into adequate learning or social development in a normal manner. See Fla. Birth-Related Neurological Injury Comp. Ass’n v. Fla. Div. of Admin. Hearings, 686 So.2d 1349, 1356 (Fla.1997) (explaining that infant was permanently and “substantially mentally and physically impaired” as result of “birth-related neurological injury,” thus, entitling him to compensation under the Plan, even though he was average or even above average in his cognitive skills and preacademic skills; as result of birth-related events causing oxygen deprivation, infant suffered focal injury to basal ganglia, which aids body in performing its “physical functions,” and as a direct result of his injury, he would not be able to communicate, attend school or otherwise learn and develop intellectually without substantial accommodation); see also Adventist Health Sys./Sunbelt, Inc. v. Fla. Birth-Related Neurological Injury, 865 So.2d 561 (Fla. 5th DCA 2004) (explaining that under the Plan, the identification of a “substantial mental impairment” may include not only significant cognitive deficiencies but can include, in a proper case, additional circumstances such as significant barriers to learning and social development).
The existence of permanent brain injury or damage alone, without demonstrating both permanent and substantial mental and physical impairment, is not sufficient to demonstrate that the infant suffers a “birth-related neurological injury,” as defined in section 766.302(2). See Fla. Birth-Related Neurological Injury Comp. Ass’n, 686 So.2d at 1354 (holding that the term “and,” as used in the Plan, cannot be replaced with word “or” and read in disjunctive; thus, in order to obtain coverage, infant must suffer both substantial mental and substantial physical impairments, and it is insufficient that infant suffer only substantial impairment, mental or physical); Adventist Health Sys./Sunbelt, Inc. (holding that evidence supported ALJ’s finding that child had not suffered a “substantial mental impair *1096 ment” in addition to her cerebral palsy, for purposes of the Plan; despite child’s physical impairments and damage shown on brain scans, child was of normal or above-average intelligence). Here, Dr. Trumble testified that Sierra had a physical brain injury, which could be readily seen on her brain scans. However, he agreed that Sierra did not suffer from any physical motor abnormalities, which was echoed by Sierra’s pediatrician. Thus, it would appear that the ALJ’s finding that “Dr. Trumble agrees that no physical impairment ensued” was supported by competent, substantial evidence.
The Matteinis also contend that the ALJ’s interpretation of the law is clearly erroneous. They claim that the substantial competent evidence in this case supports only the conclusion that Sierra’s neurological impairment was the result of mechanical injury incurred in the course of delivery, and that she was permanently and substantially mentally and physically impaired. The Matteinis maintain that NICA’s expert witness, Dr. Duchowny, did not dispute that Sierra had a speech delay; however, he attributed her speech delay, not to the injury to her brain, but rather, called it “developmental,” suggesting that it was but one of several developmental weaknesses. The Matteinis maintain that Dr. Duchowny’s conclusion was unreasonable, in light of the testimony of Sierra’s pediatrician, who had observed her closely over a period of years, and who had reported that she was normal in every respect except for her speech delay.
Again, it appears that the Matteinis are asking this Court to reweigh the evidence considered by the ALJ. It is clear that NICA’s expert testified that based on his neurological evaluation of Sierra, and a review of her medical records, Sierra did exhibit a speech delay; however, her speech delay was developmental in nature, ie., based upon brain maturation, and, therefore, unrelated to her brain injury, and was not a permanent or substantial mental impairment. While the Matteinis offered countervailing testimony from various experts and lay witnesses, the ALJ credited NICA’s witnesses more heavily. The ALJ’s factual finding that Sierra did not suffer a substantial and material physical and mental impairment is supported by substantial competent evidence and is conclusive and binding on this Court.
AFFIRMED.
GRIFFIN and PALMER, JJ., concur.