NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ARTHUR LEE GODWIN, as Personal )
Representative of the Estate of Annie )
Godwin, )
)
      Appellant, )
)
v. )    Case No.  2D14-2588
)               2D14-2962
UNIVERSITY OF SOUTH FLORIDA )
BOARD OF TRUSTEES; DAVID )    CONSOLIDATED
SHAPIRO, M.D.; JAIME SANCHEZ, M.D.; )
FLORIDA HEALTH SCIENCE CENTER, )
INC. d/b/a TAMPA GENERAL HOSPITAL, )
)
      Appellees. )
_____ )

Opinion filed August 24, 2016.

Appeal from a final order pursuant to Fla. R.
App. P. 9.030 from the Circuit Court for
Hillsborough County, and appeal of a
nonfinal order pursuant to Fla. R. App. P.
9.130 from the Circuit Court for Hillsborough
County; Martha J. Cook, Judge.

Marjorie Gadarian Graham of Marjorie
Gadarian Graham, P.A., Palm Beach
Gardens; and Maria P. Sperando of the
Law Office of Maria P. Sperando, P.A.,
Stuart, for Appellant.

David C. Borucke, Paula J. Lozano, and
Robert J. Murphy of Cole Scott & Kissane,
P.A., Tampa, for Appellee Tampa General
Hospital.

No appearance for remaining Appellees.

LaROSE, Judge.

Arthur Lee Godwin, the personal representative of the Estate of Annie Godwin, filed this consolidated appeal of a final summary judgment entered in favor of Tampa General Hospital ("TGH"), in case 2D14-2588, and a nonfinal order entered after final judgment denying Mr. Godwin's motion for partial summary judgment as to his breach of a nondelegable duty cause of action, in case 2D14-2962. We have jurisdiction in case 2D14-2588, see Fla. R. App. P. 9.030(b)(1)(A), and in case 2D14-2962, see Fla. R. App. P. 9.130(a)(4),[1] and affirm.

Background

At the end of September 2009, Mrs. Godwin suffered from a severe stomach ache, nausea, and decreased appetite. She went to the TGH emergency room on October 12, 2009. She was later admitted as a patient. Mrs. Godwin signed a Certification and Authorization form, as well as a Special Notice form.

She was diagnosed with colon cancer. On October 21, 2009, Dr. Jaime Sanchez and Dr. David Shapiro operated to remove the tumor. The day before surgery, Dr. Sanchez met with Mrs. Godwin to discuss the procedure. At that time, Mrs. Godwin signed another form, the Consent & Disclosure for Medical and/or Surgical Procedures. Unfortunately, the surgery did not go well. Mrs. Godwin sustained a tear to the wall of

---

[1]After the filing of the notice of appeal in this case, the supreme court approved amendments to Florida Rule of Appellate Procedure 9.130. See In re Amend. to Fla. R. of App. P., 183 So. 3d 245, 252 (Fla. 2014). The amendments became effective on January 1, 2015.

her inferior vena cava.[2]  Excessive bleeding caused Mrs. Godwin to die on the operating table.

Mr. Godwin sued the University of South Florida Board of Trustees ("USF"), Dr. Shapiro, Dr. Sanchez, and TGH for medical malpractice.[3]  Mr. Godwin argues to us that the physicians responsible for Mrs. Godwin's care were agents of TGH.  He also asserts that TGH had a nondelegable duty to provide Mrs. Godwin with nonnegligent surgical procedures and that TGH failed to satisfy the requirements of section 1012.965, Florida Statutes (2009).  TGH responds that the physicians who cared for Mrs. Godwin were independent contractors employed by USF and that TGH properly delegated any duty of care and related potential for liability to USF.  Central to the issues before us are the documents that Mrs. Godwin signed at TGH related to her care.

### Signed Documents

When she went to the TGH emergency room, Mrs. Godwin signed the Special Notice form and the Certification and Authorization form.  About one week later, on the eve of her surgery, she met with Dr. Sanchez and signed the Consent and Disclosure form.

The Special Notice states as follows:

> I acknowledge that I have been given this separate written conspicuous notice by the University of South

---

[2]The inferior vena cava is the largest vein in the human body, "formed by the union of the two common iliac veins at the level of the fifth lumbar vertebra, and returns blood to the right atrium of the heart from bodily parts below the diaphragm." Inferior Vena Cava, Merriam-Webster, http://www.merriam-webster.com/medical/inferior%20vena%20cava (last visited June 10, 2016).

[3]The final summary judgment disposed of all claims asserted against TGH.

Florida/University of South Florida Board of Trustees, a body corporate of the State of Florida ("USF") and Tampa General Hospital ("TGH") that some or all of the care and treatment I receive will or may be provided by physicians who are employees and agents of the USF, and liability, if any, that may arise from that care is limited as provided by law. I acknowledge that such physicians who are employees and agents of USF are under control of USF, not TGH, when they render care and treatment at TGH pursuant to the affiliation agreement between USF and TGH, and such USF physicians are not the employees or agents of TGH. I hereby certify that I am the patient or a person who is authorized to give consent for the patient.

(Emphasis added.)

The Certification and Authorization form explicitly states that

Medical Staff Physicians including, but not limited to, the Emergency Physicians, Physicians Assistants and Advanced Registered Nurse Practitioners, practicing in the Emergency and Trauma centers, Anesthesiologists, Nurse Anesthetists, Radiologists and Pathologist ARE NOT AGENTS OR EMPLOYEES OF TAMPA GENERAL HOSPITAL. They are independent medical practitioners exercising independent medical judgements [sic] at facilities provided by the hospital.

Finally, the Consent and Disclosure form repeated that the "physician, surgeon and his or her associates, physicians-in-training and their technical assistants are not hospital employees."

<u>Relationship between USF and TGH</u>

An affiliation agreement governs the relationship between TGH and USF. The agreement makes TGH the primary teaching hospital for USF's College of Medicine. Pursuant to the agreement, "employees or agents of [USF] assigned by [USF] to perform duties at [TGH] . . . shall not be deemed an employee or agent of [TGH] for any reason." USF selects and hires its own employees for assignment to

- 4 -

TGH and has sole control over them. USF compensates and supervises these employees.

The USF Physicians

Dr. Shapiro was a clinical professor of surgery at USF with surgical privileges at TGH. Dr. Shapiro was on call at TGH's trauma division when Mrs. Godwin was admitted to the hospital. He testified that he usually wore a USF lab coat with a USF emblem. He also wore a name tag issued by TGH that identified him as a member of the division of surgery. Our record does not indicate that Dr. Shapiro made any representations to Mrs. Godwin concerning his status with either USF or TGH. Dr. Shapiro performed surgery in other hospitals. He retired in late 2010.

An employee of USF, Dr. Sanchez was a senior resident at TGH but rotated among several hospitals. Dr. Sanchez wore a USF lab coat, a USF badge, and a TGH security badge. When he met Mrs. Godwin, Dr. Sanchez advised her that he was a USF surgical resident.

Neither Dr. Shapiro nor Dr. Sanchez maintained an office at TGH. USF paid their salaries and benefits. The only employment contract these physicians had was with USF. Our record contains no evidence suggesting that either physician told Mrs. Godwin that TGH employed them.

Analysis

Mr. Godwin argues that the trial court erred in granting summary judgment to TGH on his theory that Dr. Shapiro and Dr. Sanchez were apparent agents of TGH. He asserts further that the Special Notice Mrs. Godwin signed did not comply with section 1012.965, and that as a result, TGH had a nondelegable duty to provide Mrs. Godwin with nonnegligent surgical services. Mr. Godwin also claims that because TGH

is a Medicare provider, the regulations promulgated under the Medicare Act imposed an independent nondelegable duty on TGH.  Each argument fails.

### A. Standard of Review

We review a summary judgment de novo.  Volusia County. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

### B. Compliance with section 1012.965

Section 1012.965(1) limits TGH's exposure to liability for the allegedly negligent conduct of Dr. Shapiro and Dr. Sanchez:

> [A]n employee or agent under the right of control of a university board of trustees who, pursuant to the university board's policies or rules, renders medical care or treatment at any hospital . . . with which the university board maintains an affiliation agreement whereby the hospital . . . provides to the university board a clinical setting for health care education, research, and services, shall not be deemed to be an agent of any person other than the university board in any civil action resulting from any act or omission of the employee or agent while rendering said medical care or treatment.

For TGH to enjoy this protection, the statute requires that

> the patient shall be provided separate written conspicuous notice by the university board of trustees or by the hospital or health care facility, and shall acknowledge receipt of this notice, in writing, unless impractical by reason of an emergency, either personally or through another person authorized to give consent for him or her, that he or she will receive care provided by university board's employees and liability, if any, that may arise from that care is limited as provided by law.

§ 1012.965(1).

Mr. Godwin relies on Rayburn v. Orange Park Medical Center, Inc., 842 So. 2d 985, 988 (Fla. 1st DCA 2003), to argue that the Special Notice did not comply

- 6 -

with the statute.  The case is inapposite.  <u>Rayburn</u> held that the hospital failed to comply with section 240.215, Florida Statutes (2003), the predecessor to section 1012.965, because the form given to the patient was neither separate nor conspicuous.  <u>See</u> <u>id.</u> at 989.  Mr. Godwin also argues that the Special Notice is noncompliant because it states that the patient <u>will</u> or <u>may</u> be treated by USF physicians.  Seemingly, he argues that the Special Notice must have stated affirmatively that only USF physicians <u>will</u> provide care and treatment.

We must conclude that the Special Notice complied with section 1012.965.  There can be no dispute that TGH and USF were parties to an affiliation agreement.  Further, we can glean no material issue of fact indicating anything but that the Special Notice was a separate written and conspicuous notice contemplated by the statute.  And, by signing the Special Notice, Mrs. Godwin acknowledged its receipt. That is all the statute requires.  The language of the Special Notice adequately informed Mrs. Godwin that USF physicians could be responsible for her care; these physicians were not TGH employees or agents.  The Certificate and Authorization form and the Consent and Disclosure form, both received and signed by Mrs. Godwin, reinforced that fact.

### C. Apparent Agency

Mr. Godwin asserts that TGH held Dr. Shapiro and Dr. Sanchez out as hospital employees or agents.  Accordingly, he claims, TGH is liable under an apparent agency theory.

Generally "a hospital is not liable for the negligent acts of a physician who is not its employee, but an independent contractor."  <u>Newbold-Ferguson v. AMISUB</u>

(North Ridge Hosp.), Inc., 85 So. 3d 502, 504 (Fla. 2012); see also Emelwon, Inc. v. United States, 391 F.2d 9, 11 (5th Cir. 1968) (holding that one who employs an independent contractor is not vicariously liable for her negligence). However, Florida has long recognized that a hospital that retains an independent contractor to provide medical services may still be liable for the negligence of the independent contractor if the hospital cloaked her with apparent authority to act on its behalf. Webb v. Priest, 413 So. 2d 43, 47 n.2 (Fla. 3d DCA 1982) (citing Stuyvesant Corp. v. Stahl, 62 So.2d 18 (Fla. 1952); Thomkin Corp. v. Miller, 24 So. 2d 48 (1945)). Liability may attach, however, if: (1) the physician is an actual or apparent agent of the hospital; (2) a statute, regulation, or contract creates a nondelegable duty; or (3) the hospital failed to exercise due care in selecting the physician. Newbold-Ferguson, 85 So. 3d at 504-05. Obviously, "an employer who holds one out as his employee is estopped to deny the employee's authority." Irving v. Doctors Hosp. of Lake Worth, Inc., 415 So. 2d 55, 57 (Fla. 4th DCA 1982).

In Irving, the jury had to decide whether an emergency room physician was an employee or an independent contractor of the hospital. Id. at 56. The trial court refused to instruct the jury on estoppel. Id. at 57. The Fourth District held that "reversible error was committed when the trial court instructed the jury regarding the nonliability of an independent contractor without including the inculpatory exceptions to that rule that had been requested by Irving." Id. at 56. Unlike our case, the patient in Irving had no notice of the relationship between the hospital and the physician. Id. And, the evidence at trial raised significant issues about the extent of control the hospital exercised over the emergency room physician. Id. Here, Mrs. Godwin received three

- 8 -

separate notices informing her of the relationship between TGH and USF physicians. TGH did not hold Dr. Shapiro or Dr. Sanchez out as its employees or agents. Nor can we say that, based on our record, Dr. Shapiro and Dr. Sanchez conducted themselves in any manner to mislead Mrs. Godwin into thinking that they worked for TGH. Thus, on its facts, Irving is distinguishable from our case.

It is helpful to recall that Mrs. Godwin presented initially to the emergency room on October 12, 2009. Her surgery was about a week later. Up to her surgery, she was alert. Indeed, the day before her surgery, Mrs. Godwin signed the Consent and Disclosure form reflecting that the upcoming surgery would not be performed by TGH personnel. See Newbold-Ferguson, 85 So. 3d at 505 ("[T]he imposition of a nondelegable duty to provide competent emergency room services makes sense, because a patient in an emergency room generally has little, if any, control over who will be the treating physician."). Thus, for a third time since coming to TGH, Mrs. Godwin received notice that those providing her care, specifically, the surgeons, were USF employees.

The trial court properly granted summary judgment for TGH on Mr. Godwin's apparent agency cause of action. No disputed material facts undermine the trial court's conclusion that the physicians were not TGH employees or agents. In addition to the affiliation agreement and the three forms signed by Mrs. Godwin, we are mindful that USF controlled its physicians. As the First District observed in DeRosa v. Shands Teaching Hospital & Clinics, Inc., 504 So. 2d 1313, 1315 (Fla. 1st DCA 1987), "[f]actors considered to determine the existence of an employer and employee relationship included the selection and engagement of the employee, the payment of

wages, the power of dismissal, and the right of control over conduct." Our record contains no factual disputes as to the nature of the relationship; the physicians were employees of USF, paid by USF, and assigned by USF. USF, not TGH, controlled their activities.

### D. Nondelegable Duty Pursuant to Contract

Mr. Godwin stresses that TGH had a contractual nondelegable duty to provide nonnegligent surgical care to Mrs. Godwin. He relies on Irving, 415 So. 2d at 60-61, for the proposition that a hospital who hires an independent contractor to perform services that it has undertaken to perform is liable for the independent contractor's negligence. However, as noted earlier, Irving involved an emergency room setting. Id. at 56. Moreover, there was no indication to the patient that the emergency room physician, and not the hospital, bore the duty of care. Id. at 61.

Nevertheless, Mr. Godwin asserts that although a party can delegate performance of the nondelegable duty to an independent contractor, liability remains with the party who bore the duty, that is, TGH. See U.S. Sec. Servs. Corp. v. Ramada Inn, Inc., 665 So. 2d 268, 270 (Fla. 3d DCA 1995) ("[A] landowner may contract out the *performance* of his nondelegable duty to an independent contractor, but he cannot contract out of his ultimate legal *responsibility* for the proper performance of his duty by the independent contractor . . . ."). As we have already seen, as a matter of statute, section 1012.965, TGH properly delegated its duty of performance, as well as any related liability, to USF pursuant to the Special Notice. Moreover, the record does not indicate that TGH undertook any contractual obligations concerning Mrs. Godwin's surgical procedures.

- 10 -

Pope v. Winter Park Healthcare Group, Ltd., 939 So. 2d 185, 186 (Fla. 5th DCA 2006), aids our analysis. The Popes sued Winter Park and Dr. McMahan for the negligent care of their newborn son. As here, "[t]he Popes alleged that Winter Park . . . was liable for Dr. McMahan's negligent acts because Winter Park has a 'nondelegable' duty to treat [their son] with due care." Id. at 186. "Florida law does not currently recognize an implied nondelegable duty on the part of a hospital to provide competent medical care to its patients. Florida law does recognize, however, that such a duty can be undertaken pursuant to an express contract." Id. at 187 (citing Roessler v. Novak, 858 So. 2d 1158, 1164 (Fla. 2d DCA 2003) (Altenbernd, J., concurring)). Winter Park undertook such a contractual duty:

> I authorize Winter Park Memorial Hospital (WPMH) to furnish the necessary medical or surgical treatments, or procedures, including diagnostic, x-ray, and laboratory procedures, anesthesia, hospital services, drugs and supplies as may be ordered by the attending physician(s), his assistants or his designees . . . . This consent form plainly puts the reader on notice that physicians practicing at Winter Park Hospital are independent contractors, not agents or employees. The form also authorizes Winter Park Hospital to delegate to such physicians the services physicians normally provide.

Id. at 190. Winter Park agreed to furnish "the necessary medical or surgical treatments." Id. at 191. Because of an ambiguity in the admission contract, the appellate court remanded the case to the trial court to decide "the scope of the express contractual undertaking which may have given rise to a duty to provide nonnegligent neonatal care to [the] baby." Id. at 187. Unlike the forms in Winter Park, the forms that Mrs. Godwin received and signed contained no express undertaking by TGH to render the medical care that the USF physicians ultimately provided.

- 11 -

In large part, Mr. Godwin's argument rests on the supposition that TGH could not delegate any potential liability without Mrs. Godwin's consent. During the course of her hospitalization, however, she signed three separate notices disclosing that USF employees or agents would provide her care. Particularly important is the Special Notice, which, under section 1012.965, allows a hospital that partners with a university to be exempt from liability if the university can be held liable for the actions of its employees or agents and the notice requirements are met.

### E. Nondelegable Statutory Duty Under the Medicare Act Regulations

Finally, Mr. Godwin argues that a statutory duty imposed by Medicare cannot be delegated to an independent contractor. More specifically, Mr. Godwin asserts that the regulations promulgated under the Medicare Act require hospitals that participate in the Medicare program to maintain a nondelegable duty to provide nonnegligent care. <u>See</u> 42 C.F.R. § 482.12.[4] No Florida appellate court has reached this conclusion. We decline the invitation to be the first.

Section 482 identifies the conditions of participation for hospitals in the Medicare program. 42. C.F.R. § 482.1(b). This section was intended to specify the standards that the federal government will assess when determining whether or not a hospital will continue to be eligible to treat Medicare patients. <u>Id.</u> ("[T]he provisions of this part serve as the basis of survey activities for the purpose of determining whether a hospital qualifies for a provider agreement under Medicare and Medicaid."); <u>see also</u> <u>Sepulveda v. Stiff</u>, No. 05cv167, 2006 WL 3314530, at *8 (E.D. Va. Nov. 14 2006) (finding that section 482.1 et seq. are "intended to set out the guidelines for determining

---

[4]The record indicates that Mrs. Godwin was a Medicare beneficiary.

whether a hospital may participate in Medicaid"); <u>Blackmon v. Tenet Healthsystem Spalding, Inc.</u>, 653 S.E.2d 333, 340 (Ga. Ct. App. 2007) ("[Section 482.12(e)] does not purport to impose state tort liability on hospitals for the negligence of their independent contractors; rather it simply outlines that with which the hospitals must comply to receive Medicare."), <u>rev'd in part on other grounds</u>, 667 S.E.2d 348 (Ga. 2008), <u>vacated in part on other grounds</u>, 699 S.E.2d 237 (Ga. Ct. App. 2008).

The Department of Health and Human Services clarified that section 482.12(e) "indicate[s] that the governing body is responsible for assuring that the contractor furnishes services that permit the hospital to comply with all applicable conditions of participation and standards for the contracted services." Medicare and Medicaid Programs; Conditions of Participation for Hospitals, 51 Fed. Reg. 22,010-01, 22,015 (June 17, 1986) (to be codified at 42 C.F.R. p. 482). The quality assurance condition, section 482.21, was revised "to assure that services provided under contract that relate to patient health and safety are included for evaluation in the quality assurance plan." Medicare and Medicaid Programs; Conditions of Participation for Hospitals, 51 Fed. Reg. at 22,015.

The rule does not create liability for the hospital due to the negligence of any independent contractor. Instead, the rule and the discussion and responses to public comments explain that the services that a contractor furnishes to a hospital will be part of the quality assurance evaluation for the hospital's continued participation in the Medicare program. The rule does not purport to diminish or preempt state laws dealing with the traditional common law theories of principal/agent and independent contractors. <u>See</u> <u>La. Pub. Serv. Comm'n v. F.C.C.</u>, 476 U.S. 355, 368 (1986) ("Pre-

emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law . . . .").

Mr. Godwin's call for the imposition of strict liability on TGH for its hospital employees, agents, or independent contractors finds no support in the language of the Medicare statute or related regulations.

## Conclusion

Affirmed.


BADALAMENTI, J., and CASE, JAMES R., ASSOCIATE SENIOR JUDGE, Concur.