415 So.2d 55 (1982)
Deborah IRVING, Individually, and As Mother and Next Friend of Jennifer Johnson, Appellant,
v.
DOCTORS HOSPITAL OF LAKE WORTH, INC., Appellee.
No. 81-118.
District Court of Appeal of Florida, Fourth District.
June 2, 1982.
Rehearings Denied July 8, 1982.
Paul A. Louis and Paul Siegel of Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A., Miami, for appellant.
Robert T. Bergin, Jr., of Brennan, McAliley, Hayskar & McAliley, P.A., West Palm Beach, for appellee.
DOWNEY, Judge.
This action involves the liability of a hospital for alleged negligent diagnosis and treatment by an emergency room physician that resulted in serious injury to appellant's minor daughter.
*56 The appellant, Deborah Irving as mother and next friend of her daughter, Jennifer Johnson, sued Gilbert R. Panzer, M.D., Doctors Hospital of Lake Worth, Inc., and Florida Patients Compensation Fund to recover damages for the negligence of Dr. Panzer in failing to diagnose that Jennifer Johnson was suffering from meningitis when she was brought to the emergency room of Doctors Hospital for treatment. Prior to trial Irving settled with Panzer and the hospital's primary insurer paid her $100,000. The Patients Compensation Fund was obliged to pay any damages for which the hospital was liable in excess of $100,000. The case against the hospital was tried by jury, and resulted in a finding of no liability because the jury agreed Panzer was not an employee of the hospital.
Irving contends the judgment should be reversed because the trial court erred 1) in failing to direct a verdict for the plaintiff because there was no dispute that Panzer was the hospital's employee and that he was negligent; and 2) in failing to give appellant's requested instructions to the jury on the exceptions to the independent contractor rule. From our study of the briefs and record we conclude no error is demonstrated by the first point because a jury question was presented. However, we conclude that reversible error was committed when the trial court instructed the jury regarding the non-liability of an independent contractor without including the inculpatory exceptions to that rule that had been requested by Irving.
The critical issue to be decided by the jury in this case was whether Panzer, as the emergency room physician, was an employee of Doctor's Hospital, thus making the hospital vicariously liable for his negligence, or an independent contractor that shielded the hospital from vicarious liability. Evidence was adduced at length to show that Panzer operated as a professional association. Panzer worked only in the emergency room of Doctors Hospital, for 48 to 50 hours per week; he had no patients of his own, kept no records and sent no bills; he performed no follow up care on hospital patients he treated unless they had no regular physician. He was required to see all patients who came to the emergency room. The hospital furnished all support personnel for the emergency room, provided all supplies and medicines, managed the billing and receipts, and paid Panzer $35 per hour for his services. The hospital withheld no income tax or social security on payments to Panzer. The hospital's emergency department had a policy and procedure manual and the medical and dental staff of the hospital had by-laws that controlled the emergency room. These by-laws contained detailed instructions on the manner in which emergency room care was to be administered, including mandatory procedures to be followed in specific situations. There was no sign in the emergency room or any other matter or thing that would put a person on notice that the emergency room doctor was not an employee of the hospital. Furthermore, Irving testified that, when she went to the emergency room, she thought Panzer was a hospital employee.
The hospital and the Fund contended Panzer was an independent contractor rather than an employee and, as a consequence, they were not liable for his alleged negligence. Accordingly, the trial court instructed the jury in accordance with Standard Jury Instruction 3.3b,[1] on the vicarious *57 liability of an employer for the negligence of an employee or agent committed within the scope of his employment. The standard instruction further advises the jury that the employer is not responsible for such negligence if the person employed is an independent contractor.
Irving's Complaint alleged that Panzer was employed by the hospital. This allegation was denied by the answers of the hospital and the Fund. The evidence was such that the jury could have found that Panzer was an employee or that he was an independent contractor. Irving's theory maintained that Panzer was an employee, but argued that even if he was an independent contractor the hospital remained liable under the several exceptions to the independent contractor rule. Thus, at the charge conference, Irving requested three instructions that would constitute exceptions to the general exculpatory effect of the independent contractor rule, all of which the court denied. If any of those charges were proper under the law and evidence, then a reversal is mandated. It is almost trite to restate the rule that each party is entitled to have the jury properly instructed on his theory of the case. City of Tamarac v. Garcher, 398 So.2d 889 (Fla. 4th DCA 1981).
Of the three instructions that Irving requested[2] at least the first two should have been given.
The first instruction, designated in footnote 2 as [a], is an admixture of the agency doctrine of apparent authority and the doctrine of estoppel. The instruction as requested was lifted verbatim from Sapp v. City of Tallahassee, 348 So.2d 363 (Fla. 1st DCA 1977), a case involving questions of independent contractor and apparent authority. A legion of cases throughout the country espouses the doctrine of apparent authority and provides that an employer who holds one out as his employee is estopped to deny the employee's authority. One such case is Thomas v. Checker Cab Co., 66 Mich. App. 152, 238 N.W.2d 558, 560-561 (1975), wherein it was stated:
As a general rule, an employer is vicariously liable for the torts of his employee committed while that employee is acting within the scope of his employment, but is not similarly liable for the tortious actions of independent contractors. One exception to the independent contractor rule is found in the doctrine of "estoppel". The application of that doctrine to the area of vicarious liability is found in 1 Restatement Agency 2d, § 267, p. 578:

*58 "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of skill of the one appearing to be a servant or other agent as if he were such."
Where one holds himself out as the employer of a certain person, and there is reliance, that apparent employer is estopped from arguing that such person is an independent contractor. (Emphasis supplied).
This principle has been applied in the context of a hospital setting as to the status of the doctor and the vicarious liability of the hospital. Thus, in Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121, 1123-24 (1977), the court stated:
In B.P. Oil Corp. v. Mabe, 279 Md. 632, 643, 370 A.2d 554, 560 (1977), this Court endorsed § 267 of Restatement (Second) of Agency, which provides in part:
"One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such." (Emphasis supplied).
* * * * * *
In the instant case, all appearances suggest and all ordinary expectations would be that the Hospital emergency room, physically a part of the Hospital, was in fact an integral part of the institution. It is not to be expected, and nothing put Mr. Powell on notice, that the various procedures and departments of a complex, modern hospital like Holy Cross are in fact franchised out to various independent contractors. The situation seems to us substantially similar to that in Stanhope v. Los Angeles College of Chiropractic, 54 Cal. App.2d 141, 128 P.2d 705 (1942), where the court, holding that an apparent agency existed between a hospital and an independent radiologist, stated (128 P.2d at 708):
"... [The] appellant did nothing to put respondent on notice that the X-ray laboratory was not an integral part of appellant institution, and it cannot seriously be contended that respondent, when he was being carried from room to room ... should have inquired whether the individual doctors who examined him were employees ... or were independent contractors."
We thus hold that Holy Cross Hospital represented to the decedent that the staff of the Holy Cross Hospital emergency room were its employees, thereby causing the decedent to rely on the skill of the emergency room staff, and that the Hospital is consequently liable to the decedent as if the emergency room staff were its employees. (Emphasis in original.)
Another excellent explication of the apparent authority rule within the hospital setting occurs in Arthur v. St. Peters Hospital, 169 N.J. Super. 575, 405 A.2d 443 (1979), where a plaintiff was examined in the emergency room of the defendant hospital and subsequently x-rayed in the radiology department. In subsequent litigation involving the alleged negligence of the emergency room and radiology doctors, the hospital relied on the absence of deductions from the doctors' compensation to demonstrate that the doctors involved were independent contractors. With regard to the doctors' apparent authority and its effect upon their status as independent contractors, the court said:
Since it has been assumed for purposes of this argument that the physicians here were independent contractors, the general rules outlined above make it clear that the hospital would normally not be responsible for their wrongdoing. How, then, does the doctrine of apparent authority affect that conclusion, if at all? Apparent authority, or what is sometimes referred to as the "holding out" theory, has its origins as part of the law of agency. It imposes liability, not as the result of the reality of a contractual relationship but rather because of the actions *59 of a principal or an employer in somehow misleading the public into believing that the relationship or the authority exists. The concept is essentially one of estoppel and has been explained in this manner:
* * * [T]he principal is bound by the acts of his agent with the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. The question in every case * * * is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question; * * * [Hudson & C., Loan Assn., Inc. v. Horowytz, 116 N.J.L. 605, 608, 186 A. 437, 438 (Sup.Ct. 1936)].
* * * * * *
Given the holding in Hill and despite the general rule dealing with independent contractors, there does not appear to be any rational basis for excluding the concept of apparent authority from the field of hospital liability. In those cases where it can be shown that a hospital, by its actions, has held out a particular physician as its agent and/or employee and that a patient has accepted treatment from that physician in the reasonable belief that it is being rendered in behalf of the hospital, then the hospital will be liable for the physician's negligence. (Emphasis supplied). Arthur, supra, at 445-446.
In Brown v. Moore, 247 F.2d 711 (3rd Cir.1957), the court poignantly observed that the doctor involved could be regarded as having the status of an independent contractor vis-a-vis his medical partners in the sanitarium, yet in his relation to a plaintiff/patient the doctor would be deemed a sanitarium employee.
In the present case Irving took her child to the emergency room of Doctors Hospital for treatment. As far as she was concerned, all of the personnel furnished in the emergency room were hospital employees. The hospital held itself out as affording emergency treatment and the jury could well find that Irving was dealing with the hospital. Thus, in our judgment, the foregoing authorities clearly indicate that the evidence in this case would justify a jury verdict in Irving's favor on the theory of apparent authority whether Panzer is an employee or an independent contractor. Failure to so instruct the jury deprived them of the court's advice on an important aspect of Irving's case. Indeed, that oversight might well account for the adverse verdict.
Turning now to Irving's second requested instruction, set forth as [b] in the footnote 2 herein, once again we feel the instruction was appropriate and should have been given. The thrust of the instruction is that one may not escape his contractual liability by delegating performance under a contract to an independent contractor. The contracting party remains liable for the negligent performance of the contract whether it be performed for him by his employee or an independent contractor. This principle was followed in Mills v. Krauss, 114 So.2d 817 (Fla. 2d DCA 1959), wherein Mills, a general contractor, contracted with the owner of a hotel to do certain renovation and repairs to the hotel. Mills subcontracted the roofing work to Krauss, a roofing contractor who negligently performed the task. Mills sued the owner for the balance due on the contract and the owner counterclaimed against Mills for Krauss's negligent work. Mills settled with the owner. When he was not paid, Krauss sued Mills who counterclaimed for indemnification for the amount he had paid the owner for Krauss's improper work. Krauss contended Mills could not recover against him because Mills had not been liable to the owner since Mills had employed Krauss as an independent contractor to do the work. The trial court's summary judgment in favor of Krauss was reversed on appeal, the court stating:
The appellees in their brief have cited a number of cases which recognize and deal *60 with the general rule of non-liability of an employer for the negligence of an independent subcontractor. The appellants strongly urge upon us that the contractual relations existing between the appellants and the owner of the premises create an exception to the above general rule, and with this we agree.
In some circumstances duties may devolve upon an employer which he cannot delegate to another, and in such cases the employer is liable for breach or nonperformance of such duties even though he employs an independent contractor to do the work. Dealing with nonperformance of absolute duties of an employer and with reference to contractual obligations, the following is said in 27 Am.Jur., Independent Contractors, section 48, at page 526:
"Likewise, one who, by a specific agreement, undertakes to do some particular thing, or to do it in a certain manner, cannot by employing an independent contractor, avoid responsibility for an injury resulting from the nonperformance of any duty or duties which, under the express terms of the agreement or by implication of law, are assumed by the undertaker."
* * * * * *
The pleadings and facts involved in the present case show a contractual privity between the appellants and the owner of the premises; and we hold that the duty of a general contractor to use due care in repairing the premises of another, insofar as it is applicable to the owner of the premises, is a nondelegable duty which may not be committed to an independent contractor; and the latter will be deemed to be the employee of the general contractor, for whose failure to use due care in repairing said premises the general contractor will be held responsible. 114 So.2d at 819-820.
See also: Noack v. B.L. Waters, Inc., 410 So.2d 1375 (Fla. 5th DCA 1982); Restatement, Second, Torts, § 429. Granted that the contract involved in the Mills case was express and the contractual relation existing between a hospital and an emergency room patient is implied, the ultimate responsibility of the employer remains the same.
This exception to the principle of non-liability has been applied in the hospital emergency room setting. For example, in Mduba v. Benedictine Hospital, 52 A.D.2d 450, 384 N.Y.S.2d 527 (1976), the hospital was sued for wrongful death due to the negligence of an emergency room doctor. Predictably, the hospital contended that the emergency room doctor was not an employee but an independent contractor, which effectively shielded the hospital from liability for the doctor's conduct. The contract between the hospital and the emergency room doctor expressly provided that the doctor was not an employee. Based thereon, the trial court dismissed the complaint. The Appellate Division reversed, holding that such a contractual provision was not determinative of the relationship of doctor to hospital vis-a-vis the plaintiff. The question, said the court, was one of control. The evidence showed the operation of the emergency room was controlled by rules and regulations promulgated by the hospital governing board. So the court concluded that, under the doctor's contract with the hospital, he was not only bound to achieve a certain result, that is, direct and supervise the emergency room, but in addition he was controlled by the hospital as to the means and manner of achieving this result. Thus, the court held that the doctor was not an independent contractor. However, relevant to the point being made here, the court said:
Assuming, arguendo, that Dr. Bitash was an independent contractor, we reach the conclusion that the hospital would nevertheless be responsible for his negligence. This is not a situation where the decedent engaged Dr. Bitash in defendant's hospital. The decedent entered the hospital for hospital treatment. The defendant hospital undertook to treat decedent for a charge and furnish the doctors and staff to render that treatment. Defendant having undertaken to treat decedent, *61 which included both the necessary treatment and the furnishing of blood and other medicine needed in that treatment, was under a duty to do so effectively. Patients entering the hospital through the Emergency Room, could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital. Such patients are not bound by secret limitations as are contained in a private contract between the hospital and the doctor. Defendant held itself out to the public offering and rendering hospital services (see Hannon v. Siegel-Cooper Co., 167 N.Y. 244, 60 N.E. 597; Santise v. Martins, Inc., 258 App.Div. 663, 664, 665, 17 N.Y.S.2d 741, 742, 743).
The Court of Appeals has held that a defendant who employs an independent contractor to perform services that the defendant has undertaken to perform, is liable for the negligence of the independent contractor. (Miles v. R & M Appliance Sales, 26 N.Y.2d 451, 311 N.Y.S.2d 491, 259 N.E.2d 913.) In so holding, the court adopted the applicable rule from the Restatement of Torts, which provides:
One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants (Restatement, 2d, Torts, § 429).
The rule is applicable if "the negligence of the contractor consists * * * in carelessness in the detail of rendering them" (Restatement, 2d, Torts, § 429, Comment b). 384 N.Y.S.2d at 529.
In Jenkins v. Charleston General Hospital & Training School, 90 W. Va. 230, 110 S.E. 560 (1922), the defendant hospital was under contract to render medical care and treatment to fuel company employees. Plaintiff, an employee, broke his arm and sought treatment at the defendant hospital. The radiologist negligently treated the plaintiff and litigation ensued. The hospital contended that it was not liable because the radiologist was an independent contractor. The court rejected that argument, stating:
[T]he defense of injury by an independent contractor cannot be maintained. The radiologist was employed and paid by the defendant to perform work in discharge of its own contract and undertaking to diagnose and treat the injury. Farming out work to be done under a contract never relieves from the obligation of the contract. A man cannot avoid his contract by devolving performance thereof upon a stranger. 110 S.E. at 562.
See also: Arthur v. St. Peters Hospital, 169 N.J. Super. 575, 405 A.2d 443 (1979); Vaughan v. Memorial Hospital, 100 W. Va. 290, 130 S.E. 481, 482 (1925); Giusti v. C.H. Weston Co., 165 Or. 525, 108 P.2d 1010, 1013 (1941); Treptau v. Behrens Spa, Inc., 247 Wis. 438, 20 N.W.2d 108, 114 (1945); Schagrin v. Wilmington Medical Center, Inc., 304 A.2d 61 (Del.Sup. 1973).
In the present case, it must be remembered that after the trial court instructed the jury on the responsibility of an employer for the acts of his employee, the court added that "... a person is not responsible for the negligence of an independent contractor... ." Therefore, if the jury in this case concluded that Panzer was an independent contractor, pursuant to the court's instructions, it would necessarily not even reach the question of negligence. On the other hand, if the trial court had instructed the jury on these exceptions to the independent contractor rule, the jury might well have found the hospital liable regardless of Panza's employment status.
With reference to the denial of appellant's instruction (c) of footnote 2, we view it as merely amplifying, by means of specific references to the facts of the case, the abstract principle of law contained in instruction (b) of footnote 2, discussed above. Thus, to the extent that requested instruction *62 (c) was not otherwise objectionable as worded,[3] it was proper.
The hospital contends that the foregoing instructions, which Irving requested, were properly denied because they pertain to issues that were not pleaded. However, no occasion arose for Irving to plead exceptions to the independent contractor rule because the hospital did not plead that it was not liable because Panzer was an independent contractor. Instead, the hospital simply denied Panzer was an employee of the hospital. We hold that, under these circumstances, if the hospital was entitled to have the jury instructed on the non-liability of an independent contractor, Irving was entitled to have the jury apprised of the exceptions to that rule in accordance with Irving's requested instructions.
For the foregoing reasons, we reverse the judgment appealed from and remand the cause to the trial court for a new trial.
REVERSED AND REMANDED, with directions.
ANSTEAD, J., and OWEN, WILLIAM C., Jr., (Retired), Associate Judge, concur.
NOTES
[1] As given, the instruction read

The first issue for your determination on the claim of Debra Irving against Doctors Hospital of Lake Worth on account of the alleged negligence of Dr. Gilbert R. Panzer is whether Dr. Panzer was an employee of Doctors Hospital and was acting within the scope of his employment at the time and place of the incident complained of. An employee is a person who is employed to act for another and whose actions are controlled by his employer or are subject to his employer's right of control. An employer is responsible for the negligence of his employee if such negligence incurs while the employee is performing services which he was employed to perform or while the employee is acting at least in part because of a desire to serve his employer and is doing something that is reasonably incidental to his employment or if something the doing of which was reasonably foreseeable and reasonably to be expected of persons similarly employed.
You are instructed that a person is not responsible for the negligence of an independent contractor or of the agents or employees of an independent contractor. An independent contractor is a person who is engaged by another to perform specific work according to his own methods and whose methods of performing the work are not controlled by the person engaging him and are not subject to that person's right of control.
[2] In addition, control and domination need not be actual but may be binding upon principal or employer if apparent. That is if the principal or employer has held the agent or employee out to the public as being possessed of the requisite authority, and a third person is aware of his authority and has relied on it to his detriment, then the principal or employer is estopped from denying the agency relationship.
[b] [O]ne who undertakes by contract to do for another a given thing cannot excuse himself to the other for a faulty performance, or a failure to perform, by showing that he has engaged another to perform in his place, and that the fault or failure is that of another or independent contractor.
[c] Even if you were to find that Dr. Panzer was an independent contractor, the hospital would nevertheless be responsible for any negligence on his part if Deborah Irving brought her daughter to the hospital for hospital treatment and the Defendant hospital undertook to treat Jennifer for a charge and to furnish doctors and staff to render that treatment. "Defendant having undertaking [sic] to treat [Jennifer], which included both the necessary treatment and the furnishing of ... medicine [prescriptions] needed in that treatment, was under a duty to do so effectively. Patients entering the hospital through the Emergency Room, could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital. Such patients are not bound by secret limitations as are contained in a private contract between the hospital and the doctor."
[3] As worded, portions of the requested instruction appear to be an impermissible comment on the evidence.