821 So.2d 319 (2002)
Annie P. REEVES, Appellant,
v.
NORTH BROWARD HOSPITAL DISTRICT, d/b/a North Broward Medical Center, Appellee.
No. 4D01-1315.
District Court of Appeal of Florida, Fourth District.
May 29, 2002.
Rehearing Denied July 8, 2002.
David M.W. Setzler of Avolio & Hanlon, P.C., St. Augustine, for appellant.
Linda Spaulding White of Conrad & Scherer, LLP, Fort Lauderdale, for appellee.
HAZOURI, J.
This case arises from Annie P. Reeves's two count complaint for negligence and medical negligence against the North Broward *320 Hospital District d/b/a the North Broward Medical Center ("the Hospital"). The trial court entered summary judgment for the Hospital.
On March 14, 1998, Reeves, a home health care and dialysis nurse, visited one of her patients, Harold Glotzer. Finding him in a weakened state, she took him to the Hospital's emergency room. After several hours in the emergency room, Glotzer was admitted to the hospital. Reeves accompanied an emergency room technician, Christopher Sampson, as he transported Glotzer on a gurney to a hospital room. Sampson's duties included transferring patients from gurneys to beds. The first step in such a transfer is to lock the two beds together. If there is no one aiding in the patient transfer, the bed railing on the opposite side should be in the upright position to prevent the patient from rolling off the bed during the transfer. Four methods can then be used for the transfer: (1) the sheet method, moving the sheet upon which the patient lies from one bed to another; (2) using a slide board similar to the sheet; (3) having the patient "scoot"; and (4) having the patient roll across.
In this case, Sampson positioned the gurney next to the hospital bed to effectuate a rolling transfer but did not place the bed railing on the opposite side in the upright position. Sampson instructed Glotzer to roll from the gurney onto the hospital bed. During this transfer, Reeves stood at the foot of where the hospital bed and gurney came together but did not assist in the rolling transfer. Believing the patient was about to roll off the far side of the bed, Reeves jumped across the bed and tried to secure the patient by grabbing his upper torso. Reeves testified that Sampson also realized the patient was still rolling but could not reach him in time.
When Reeves grabbed the patient, she felt an electric shock across her lower back, mostly on the left side, and severe pain going down her buttock area into her left leg. At his deposition, Sampson denied that the incident happened in the manner Reeves claimed and testified he would have referred her to the emergency room and filed an incident report if it did. However, when he was later asked whether the incident happened as Reeves described, Sampson answered that he did not remember. He specifically did not remember whether the bed rail was in the upright position.
Reeves filed a two count complaint against the Hospital. Count I was labeled "Negligence" and alleged that Sampson "negligently failed to put up the safety rail on the far side of the bed" and as a result, when it appeared Glotzer would roll off the other side of the bed, Reeves attempted "to rescue him by catching his person." It was further alleged that the Hospital failed to properly train and supervise Sampson. Count II was labeled "Medical Negligence" which contained the same factual allegations with additional allegations of complying with the pre-suit requirements in Chapter 766, Florida Statutes (Supp. 1998).
The Hospital moved for summary judgment, arguing (1) it did not owe Reeves a legal duty because she was not within the reasonably foreseeable zone of risk, (2) Reeves solely caused her injuries by grabbing Glotzer without any evidence he would have fallen, and (3) Reeves' statutory medical malpractice claim must fail as it is not "a claim arising out of the rendering of, or failure to render, medical care or services" to Reeves and Sampson is not a "health care provider." Reeves responded that a cause of action for ordinary negligence is supported by "The Rescue Doctrine" and Sampson, as an employee of the *321 Hospital, meets the statutory definition of a "health care provider." The trial court granted the Hospital's motion and entered final summary judgment in its favor.
A trial court may enter summary judgment only when there are no genuine issues of material fact conclusively shown from the record and the movant is entitled to judgment as a matter of law. See Albelo v. S. Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available. See id. Moreover, in negligence cases, summary judgments should be cautiously granted. See Gonzalez v. B & B Cash Grocery Stores, Inc., 692 So.2d 297, 299 (Fla. 4th DCA 1997) (citing Moore v. Morris, 475 So.2d 666, 668 (Fla.1985)). The standard for review of an order granting summary judgment is de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Reeves contends that the trial court erred in granting summary judgment as to count I, because Sampson created a situation of peril as to Glotzer and it was foreseeable that Reeves would attempt to "rescue" Glotzer from this peril of rolling off the hospital bed thereby making the Hospital liable for Reeves' injury during the rescue. The Hospital contends that the rescue doctrine does not apply to the facts of this case, and even if it does apply, it does not define the Hospital's duty as the doctrine relates only to the proximate cause element.
For the rescue doctrine to come into play the defendant must have been negligent, the person (or property) to be rescued must have been in imminent peril, and the rescuer must have acted reasonably. See Oscar Klein Plumbing & Heating v. Boyd, 461 So.2d 221, 222 (Fla. 4th DCA 1984) (quoting Newsome v. St. Paul Fire & Marine Ins. Co., 350 So.2d 825, 826 (Fla. 2d DCA 1977)).
The basic precept of the "rescue doctrine" is that the person who has created a situation of peril for another will be held in law to have caused peril not only to the victim, but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in the rescue attempt.
New Hampshire Ins. Co. v. Oliver, 730 So.2d 700, 702 (Fla. 4th DCA 1999); accord Ryder Truck Rental, Inc. v. Korte, 357 So.2d 228, 230 (Fla. 4th DCA 1978).
The Hospital first submits that Reeves cannot satisfy the first element and prove it was negligent. Although the Hospital concedes it created a foreseeable zone of risk as to Glotzer, it denies it was negligent. Assuming the facts in a light most favorable to Reeves, Sampson performed the rolling transfer without anyone's help and failed to put up the bed rail on the far side. He thus failed to take any action to prevent the type of injury reasonably expected from the zone of risk he created, namely preventing Glotzer from rolling off the far side of the bed. But for Reeves' actions, the patient would have sustained a foreseeable injury. The record evidence thus supports the claim of the Hospital's negligence, and the first element of the rescue doctrine is satisfied.
The Hospital next submits that Reeves cannot satisfy the second element, that the patient was in imminent peril and rescue was necessary. It contends that the patient may possibly have fallen off the bed during the rolling transfer, but a mere possibility is insufficient to establish necessity for a rescue. Of note, the Hospital's counsel conceded at the summary judgment hearing that there was a risk that *322 the patient might fall.[1] The Hospital discounts Reeves' subjective perception that the patient was going to roll off the bed and urges this court to adopt a rule that the necessity for a rescue be objectively reasonable, i.e. "require the victim or property to reasonably be under actual threat of injury or harm." The Hospital fails to explain how it would be determined what constitutes a "reasonable actual threat." We decline to adopt such a rule.
By any standard, there was sufficient peril to justify a rescue attempt. Assuming the facts in a light most favorable to Reeves, both she and Sampson realized that the weakened dialysis patient was about to roll off the bed. Sampson recognized the peril but could not reach far enough to act. Reeves was not required to wait to see if Glotzer would actually roll off the bed before acting, nor was Reeves required to ignore the normal gravitational forces acting on Glotzer and assume that the forces of gravity were somehow suspended in the hospital rooms of the North Broward Medical Center. The second element of the rescue doctrine is thus satisfied.
As to the reasonableness of the rescue, both parties agree that it is an issue for the jury. Since the first two elements of the rescue doctrine were satisfied and the third element is for the jury, the trial court erred in granting summary judgment for the Hospital on count I in light of "The Rescue Doctrine."
As to the trial court's granting of summary judgment on count II for medical negligence, we affirm. As this court pointed out in Bell v. Indian River Memorial Hospital, 778 So.2d 1030, 1033-34 (Fla. 4th DCA 2001), not every alleged wrongful act by a healthcare provider, or its employee, amounts to medical malpractice. The alleged wrongful act must be directly related to the improper application of medical services to the patient and the use of professional judgment or skill. See id. It is undisputed that Reeves received no medical services from the Hospital that required the use of professional judgment or skill.
Reversed in part and affirmed in part.
WARNER and SHAHOOD, JJ., concur.
NOTES
[1] Defense counsel: "I don't doubt that there was a risk for Mr. Glotzer, that he might fall. It was certainly foreseeable that he was in that risk."