941 So.2d 514 (2006)
James D. STONE, Appellant,
v.
PALMS WEST HOSPITAL, Gerald T. Turgeon, D.O., Gerald T. Turgeon, D.O., P.A., Shakhar Sharma, M.D., Rahul A. Patel, M.D., and Palm Beach Primary Care Associates, Inc., Appellees.
No. 4D05-4042.
District Court of Appeal of Florida, Fourth District.
November 8, 2006.
*515 Rebecca Mercier-Vargas and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Joseph Johnson of Babbitt, Johnson, Osborne & LeClainche, P.A., West Palm Beach, for appellant.
Arthur J. England, Jr. and Edward G. Guedes of Greenberg Traurig, P.A., Miami, and Bruce M. Ramsey and Kera E. Hagan of Billing, Cochran, Heath, Lyles, Mauro & Anderson, P.A., West Palm Beach, for appellee Palms West Hospital.
Gail Leverett Parenti of Parenti & Parenti, P.A., Miami, and William A. Bell, General Counsel, Florida Hospital Association, Tallahassee, for Amicus Curiae Florida Hospital Association.
PER CURIAM.
James Stone sued Gerald T. Turgeon, D.O., Gerald T. Turgeon, D.O., P.A., Shakhar Sharma, M.D., Rahul A. Patel, M.D., Palm Beach Primary Care Associates, Inc., and Palms West Hospital (among others not relevant to this appeal) for medical malpractice. The trial court entered final summary judgment in favor of Palms West, concluding that there was no jury question regarding the apparent agency of the physicians who treated Stone at the hospital. We reverse.
Stone sued Palms West based on, inter alia, a theory of apparent agency based on the negligence of on-call physicians Turgeon, Sharma, and Patel.
*516 Palms West filed a motion for partial summary judgment asserting that it was not liable for the acts of its on-call physicians, because a hospital is not liable for the acts of physicians merely because they have staff privileges. Palms West additionally asserted that there was no evidence, whether statements or conduct, demonstrating that it represented to Stone that Turgeon, Sharma, and Patel were its agents.
Palms West attached several documents in support of its partial summary judgment motion. Among them was an affidavit from Palms West's Director of Physician Relations, Glennda Williams, setting forth the relationship between the hospital and the physicians from Palms West's point of view:
3. The above-referenced physicians were not agents or employees of Palms West Hospital. These physicians were engaged in the private practice of their medical specialties, and were based in their private offices, but they did have medical staff privileges at Palms West Hospital. Also, from time to time, they would have an obligation to respond to emergency department call on a rotational basis.
4. None of the above-referenced physicians had offices at the Hospital and they were not Hospital-based physicians. None of these physicians, nor anyone associated with Palms West Hospital, have the authority to represent to patients that these physicians were agents or employees of the Hospital.
5. Palms West Hospital did not compensate these physicians for professional services, and did not bill patients for these physicians' services.
6. Patients, including those admitted through the emergency department, were provided with, and were required to sign, a document entitled "Conditions of Admission and Authorization for Medical Treatment," which advised patients that the physicians providing services to them were independent contractors and not employees or agents of the Hospital. The medical chart relating to James D. Stone's admission of May 17, 2000 indicates that he signed such a document, a copy of which is attached hereto as Exhibit "A."
7. Palms West Hospital had no contractual relationship with these above-referenced physicians or their professional associations.
Also filed with the trial court were the depositions of many of the individuals involved in Stone's care and treatment at Palms West. In his deposition, Stone, who is legally blind, testified that after being seen by his doctor for numbness in his extremities, he became incontinent and his doctor instructed him to go to the nearest hospital, which happened to be Palms West.
In his deposition, Stone indicated the following regarding his interaction with Palms West:
PLAINTIFF: When you advised the hospital personnel that your doctors were Dr. Phillips and Dr. Stone, were you informed that those doctors in essence did not belong to this hospital, Palms West Hospital?
. . . .
STONE: Yeah.
PLAINTIFF: Did the personnel at Palms West Hospital tell you that they had their own doctors who could come in and treat you?
. . . .
STONE: Yes, I did.
PLAINTIFF: And the doctors that they called in to see you that you were told were the hospital's own doctors, were they Dr. Sharma and Dr. Turgeon?

*517 . . . .
STONE: Yes.
PLAINTIFF: Did you have any say-so as to the assignment by the hospital of Dr. Sharma and Dr. [Turgeon].
STONE: When I went in, that was the ones that I got.
PLAINTIFF: So what the hospital told you was that your doctors are not allowed to come in and see you at Palms West Hospital but instead they had their own doctors who they would call in to see you and treat you; is that correct?
. . . .
STONE: Yes.
Additionally, Stone's mother testified regarding her son's interaction with Palms West during her deposition:
DEFENDANT: Did you talk to the nursing staff there?
STONE: Yeah, when I first got in, I told them that Dr. Stone told me to bring him to the emergency room, and she said that Dr. Stone did not come to that hospital, and she said that she would have to give him their doctor, and then they took him in the back and I went in to triage, I think is what they call it when they take you to another room and they ask you questions, and I guess  I think that's the nurse that talks to you there.
Stone also filed a reply and memorandum of law in opposition to Palms West's motion for partial summary judgment. He asserted that summary judgment was inappropriate because there were genuine issues of material fact regarding whether Turgeon, Sharma, and Patel were apparent agents of Palms West. Stone also filed an affidavit in opposition to summary judgment. The affidavit[1] contained the following attestations:
4. Upon my arrival I informed the hospital personnel that my neurologist was Dr. Reed Stone. They informed that Dr. Stone did not belong to Palms West but that Palms West had their own doctors who would treat me. Palms West provided Drs. Turgeon, Patel and Sharma to treat me who I believed were employed by Palms West. Based upon these representations I relied upon Palms West to provide me with doctors who were competent and capable of treating me, including my neurological needs.
5. Upon being admitted to Palms West Hospital, someone in the hospital flipped the page over and placed the signature page of the Conditions of Admission and Authorization for Medical Treatment in front of me and instructed me to sign it. I was never given the opportunity to read the paper I was asked to sign nor was its content explained to me.
6. I believed that the doctors who provided care for me, including Dr. Turgeon, Dr. Sharma and Dr. Patel, were working for the hospital. I thought their offices were located in the hospital.
7. I did not have the opportunity to choose which doctor was assigned to treat me during my stay at Palms West Hospital. I relied on the hospital to not only provide me with medical care, but also to select appropriate physicians to provide me such care.
The trial court held a hearing on Palms West's motion for partial summary judgment, at which it considered the affidavits and depositions provided by the parties. *518 Thereafter, the trial court entered an Order Granting Partial Summary Judgment in Favor of Defendant, Palms West Hospital. The trial court made the following findings and reached the following conclusions relevant to this appeal:
The facts presented to this Court were that these physicians have medical staff privileges at Palms West Hospital, subject to the medical staff by-laws, but they were engaged in private practice of their medical specialties based in their private offices and were not hospital-based physicians and did not have any contractual relationship with the hospital.
It is well-established that a hospital is not liable for the actions of non-employed physicians merely because they have staff privileges to treat the patient within the facility. Insinga v. LaBella, 543 So.2d 209 (Fla. 1989); Liberatore v. NME Hospitals, Inc., 711 So.2d 1364 (Fla. 4th DCA 1998); Cedars Medical Center, Inc. v. Ravelo, 738 So.2d 362 (Fla. 3d DCA 1999); Reed v. Good Samaritan Hospital Association, Inc., 453 So.2d 229 (Fla. 4th DCA 1984). An exception to this rule applies to hospital-based physicians, who are under contract with the hospital to provide professional services, i.e. emergency department, anesthesiology, radiology and pathology physicians, when the hospital, by words or conduct causes or allows a patient to believe that a physician is an agent of and had authority to act for the hospital and the patient justifiably relied upon that belief in accepting treatment from that physician and in such a case the hospital may be liable for the physician's negligence under the theory of apparent agency. See: Irving v. Doctors Hospital of Lake Worth, 415 So.2d 55, 55-59 (Fla. 4th DCA 1982), rev. denied, 422 So.2d 842 (Fla. 1982) and Cuker v. Hillsborough County Hospital Authority, 605 So.2d 998 (Fla. 2d DCA 1992).
In Irving, Cuker and other cases in which Florida appellate courts have held that there was an issue of fact on the agency vis-à-vis independent contractor issues the courts were dealing with hospital-based physicians who had a contract with the hospital to provide medical services to patients at the hospital. In distinguishing the law applicable to hospital-based/contract physicians and private physicians who have privileges at the hospital, the court in Reed stated as follows:
The Irving case, supra, on its facts, makes it abundantly clear that it was concerned with the negligence of the emergency room physician who was paid a salary by the hospital and possessed of no private patients. This same vital distinction is constant throughout the cases cited by appellant. In the instant case, the child's estate presented no evidence from which it could be concluded that the physician with staff privileges was either an agent or an employee of the hospital. Thus, there only remains the question of vicarious liability on the part of the hospital for the negligence of an independent contractor.
We, therefore, hold, in accord with the Supreme Court case of Wilson v. Lee Memorial Hospital, 65 So.2d 40 (Fla. 1953), and our own Irving case, supra, that under the facts presented here, the hospital is not vicariously liable for the tortious acts of an independent contractor such as a physician in private practice to whom it has merely granted staff privileges.
Id.
With regard to these agency issues, the Court also accepts as uncontroverted *519 facts that, for the reasons stated in the affidavit of the Plaintiff, Mr. Stone believed that these physicians were working for the hospital. Even if the apparent agency exception was applicable to the physicians involved in this case, Florida courts have held that apparent authority does not arise from either the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent. Instead `apparent authority' exists only where the principal creates the appearance of an agency relationship. Izquierdo v. Hialeah Hospital, Inc., 709 So.2d 187 (Fla. 3d DCA 1998). See also Lensa Corporation v. Poinciana Gardens Association, Inc., 765 So.2d 296 (Fla. 4th DCA 2000); Taco Bell of California v. Zappone, 324 So.2d [121] (Fla. 2d DCA 1975).
* * *
Accordingly, this Court finds no material issue of disputed fact requiring resolution by the jury . . .
Following a motion for rehearing, the trial court entered final summary judgment in favor of Palms West.
The standard of review applicable to trial court rulings on motions for summary judgment is de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000); Reeves v. N. Broward Hosp. Dist., 821 So.2d 319, 321 (Fla. 4th DCA 2002). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Aberdeen, 760 So.2d at 130. "All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available." Reeves, 821 So.2d at 321.
Generally, a hospital may not be held liable for the negligence of independent contractor physicians to whom it grants staff privileges. See Insinga v. LaBella, 543 So.2d 209, 212, 214 (Fla. 1989); Public Health Trust of Dade County v. Valcin, 507 So.2d 596, 601 (Fla. 1987). However, "[u]nder certain circumstances . . . a hospital may be held vicariously liable for the acts of physicians, even if they are independent contractors, if these physicians act with the apparent authority of the hospital." Roessler v. Novak, 858 So.2d 1158, 1162 (Fla. 2d DCA 2003). However,
It is well-settled that a hospital's granting of staff privileges to a particular health care provider, without more, is insufficient as a matter of law to create a jury question on whether the hospital impliedly represented to the public that the health care provider was the hospital's apparent agent.
Jones v. Tallahassee Mem'l Reg'l Healthcare, Inc., 923 So.2d 1245, 1247 (Fla. 1st DCA 2006)(internal citations omitted).
As for apparent agency,
An apparent agency exists only if all three of the following elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation. Mobil Oil Corp. v. Bransford, 648 So.2d 119, 121 (Fla. 1995). Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself. Izquierdo v. Hialeah Hosp., Inc., 709 So.2d 187, 188 (Fla. 3d DCA 1998). Rather, apparent authority exists only where the principal creates the appearance of an agency relationship. Id.

*520 Roessler, 858 So.2d at 1161-1162. Furthermore, "[t]he reliance of a third party on the apparent authority of a principal's agent must be reasonable and rest in the actions of or appearances created by the principal." Lensa Corp. v. Poinciana Gardens Ass'n, 765 So.2d 296, 298 (Fla. 4th DCA 2000). In other words:
In those cases where it can be shown that a hospital, by its actions, has held out a particular physician as its agent and/or employee and that a patient has accepted treatment from that physician in the reasonable belief that it is being rendered in behalf of the hospital, then the hospital will be liable for the physician's negligence.
Irving v. Doctors Hosp. of Lake Worth, Inc., 415 So.2d 55, 59 (Fla. 4th DCA 1982). Overall, "[t]he existence of an agency relationship is normally one for the trier of fact to decide." Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853 (Fla. 2003); see also Roessler, 858 So.2d at 1162 ("The question of a physician's apparent authority to act for a hospital is often a question of fact for the jury.").
The parties relied primarily upon six cases[2] in presenting their arguments on appeal either supporting or refuting the presence of a jury question concerning apparent authority under the circumstances of this case. Although all six cases are instructive on the issue confronted by this Court, we find one to be particularly useful in resolving the issue of apparent agency in this case, Jones v. Tallahassee Memorial Regional Healthcare, Inc., 923 So.2d 1245 (Fla. 1st DCA 2006), rev. dismissed, 935 So.2d 500 (Fla. 2006).
In Jones, the physician was an employee of an anesthesiology group that served as a pool of staff physicians at the hospital, the physician was required to abide by medical staff rules and regulations, the physician was required to be on call, the physician was required to wear a name badge bearing the hospital's name, and the physician was required to identify himself to patients as a member of the hospital's medical staff. Id. at 1246, 1247. The appellate court found a jury question regarding apparent agency, and wrote:
Even if all of this evidence arose only as a result of TMH granting Giralt and Johns staff privileges at its hospital, and was therefore construed as being insufficient as a matter of law to raise any issue of material fact as to whether the two men were TMH's apparent agents, the ambiguity in this record as to whether TMH or Mosley chose Giralt as the anesthesiologist for Mosley's surgical procedure added a layer of factual uncertainty relative to the apparent agency claim which precluded entry of summary judgment on that claim as a matter of law.
Id. at 1247-1248.
Based on Jones, the hospital liability and apparent agency principles discussed in cases cited in this opinion, and the facts of this case, we conclude that Stone presented a jury question regarding apparent agency. Elements (b) and (c) of an apparent agency claim as set forth in Roessler are satisfied because "[t]he fact of seeking medical treatment in a hospital emergency room and receiving treatment from a physician *521 working there is sufficient" to satisfy these elements of reliance and detriment based on Orlando Regional Medical Center v. Chmielewski, 573 So.2d 876, 879-880 (Fla. 5th DCA 1990), abrogated on other grounds, Boulis v. Fla. Dep't of Transp., 733 So.2d 959 (Fla. 1999). As such, this case hinges on element (a) of an apparent agency claim, whether Palms West purportedly made a representation indicative of an apparent agency relationship so as to suggest a jury question.
We turn to a consideration of element (a) of Stone's apparent agency claim. Although Stone testified in his deposition regarding some subjective beliefs about the employment statuses of his treating physicians, including that he thought their offices were in the hospital, the alleged representations made by hospital personnel are not afflicted by this shortcoming because their meaning is objectively plain so that those representations could support a jury finding of apparent agency. Because the alleged basis of apparent agency in this case is objective rather than subjective, we continue the analysis of Stone's apparent agency theory. The plaintiff contends that this is not a case about a hospital merely granting staff privileges to physicians. Rather, both Stone and his mother testified that personnel representing Palms West told them that because his doctors did not have staff privileges at the hospital he would be provided with the hospital's doctors. Allegedly, the hospital subsequently selected those doctors, without any input or choice exercised by Stone, and provided Stone with medical care and treatment through those doctors. Such alleged conduct by a hospital was found to be a factor supporting a jury question in both Jones and Cuker. As such, this is a case about staff privileges plus a factual uncertainty regarding whether an affirmative representation and conduct by the principal imbued the doctors that treated Stone with apparent authority. Therefore, the evidence presented on summary judgment points to a jury question regarding apparent agency.
In sum, we conclude that the trial court erred by entering final summary judgment where the parties presented conflicting evidence giving rise to a jury question regarding apparent agency. Consequently, this case is reversed and remanded for further proceedings consistent with this opinion.
Reversed and Remanded.
GUNTHER, FARMER, JJ., and KRATHEN, DAVID H., Associate Judge, concur.
NOTES
[1] Palms West did not rely on the Conditions of Admission and Authorization for Medical Treatment form in support of its motion for summary judgment. As such, the trial court only considered Stone's affidavit to the extent that it addresses other issues and did not base its decision on summary judgment on the consent form.
[2] Jones v. Tallahassee Mem'l Reg'l Healthcare, Inc., 923 So.2d 1245 (Fla. 1st DCA 2006); Roessler v. Novak, 858 So.2d 1158 (Fla. 2d DCA 2003); Izquierdo v. Hialeah Hosp., Inc., 709 So.2d 187 (Fla. 3d DCA 1998); Cuker v. Hillsborough County Hosp. Auth., 605 So.2d 998 (Fla. 2d DCA 1992); Orlando Reg'l Med. Ctr. v. Chmielewski, 573 So.2d 876 (Fla. 5th DCA 1990), abrogated on other grounds, Boulis v. Fla. Dep't of Transp., 733 So.2d 959 (Fla. 1999); Irving v. Doctors Hosp. of Lake Worth, Inc., 415 So.2d 55 (Fla. 4th DCA 1982).