# Third District Court of Appeal

## State of Florida

Opinion filed March 27, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1661
Lower Tribunal No. 14-2006
_____

## Guillermo Tabraue III, Esq., etc.,
Appellant,

vs.

## Doctors Hospital, Inc., et al.,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Eric William Hendon, Judge.

Silva & Silva, P.A., and Jorge E. Silva; Creed & Gowdy, P.A., and Bryan S. Gowdy (Jacksonville), for appellant.

Wicker Smith O'Hara McCoy & Ford, P.A., and Jackson F. McCoy, Michael R. D'Lugo (Orlando) and Jessica L. Gross, for appellee Doctors Hospital, Inc.

Burlington & Rockenbach, P.A., and Philip M. Burlington and Adam J. Richardson (West Palm Beach), for Florida Justice Association as amicus curiae.

Beytin, McLaughlin, O'Hara, Bocchino & Bolin, and Andrew S. Bolin (Tampa), for Florida Hospital Association as amicus curiae.

Before SALTER,[1] FERNANDEZ[2] and SCALES, JJ.

SCALES, J.

Appellant Guillermo Tabraue III is the personal representative of the Estate of Suyima Torres (the "Estate"). Ms. Torres died after being treated in both the emergency room and the intensive care unit of appellee, defendant below, Doctors Hospital (the "Hospital"). The Estate sued both the Hospital and the medical providers who treated Ms. Torres in the emergency room and the intensive care unit, the latter who were independent contractors of the Hospital. Concluding, as a matter of law, that the Hospital owed no non-delegable duty to Ms. Torres, the trial court dismissed with prejudice the Estate's second amended complaint against the Hospital. Because, under the facts and circumstances of this case, we agree that the Hospital did not owe a non-delegable duty to Ms. Torres for the treatment provided to Ms. Torres by the medical providers, we affirm.

**I. Factual and Procedural Background**

On April 11, 2013, Ms. Torres, a 28-year-old adult, underwent a cosmetic procedure at a clinic. After exiting the clinic, Ms. Torres lost consciousness, and an ambulance transported her to the Hospital's emergency room. Presumably, because Ms. Torres was incapacitated,[3] Ms. Torres's father signed a series of consent forms

---

[1] Did not participate in oral argument.

[2] Did not participate in oral argument.

[3] See footnote 10, *infra*.

2

that are usually signed by the patient.    One of those forms was an acknowledgement that the physicians who would be treating Ms. Torres would be independent contractors, and not employees, of the Hospital.[4] Neither Ms. Torres nor her father selected the medical providers who treated her at the Hospital.

Regrettably, Ms. Torres's condition declined during her treatment in the emergency room and later that day in the intensive care unit.[5] She died that same night, about eight hours after her admission.

On January 23, 2014, the Estate filed suit against the various medical providers and the Hospital, and on February 12, 2014, filed an amended complaint. In this amended complaint, the Estate alleged two counts against the Hospital:

---

[4] The admission form contained, among other provisions, a "CONSENT TO TREATMENT" paragraph and an "INDEPENDENT PRACTITIONERS" paragraph. The latter provides:

> I recognize that physicians, surgeons and allied health professionals providing medical services to me or my child as a patient of this facility are private practicing physicians/professionals and not employees or agents of this facility. These private physicians/professionals include, without limitation, radiologists, anesthesiologists, pathologists, emergency room physicians, ICU physicians, neonatologists and all other physician/professionals called in consultation.

[5] We note that the Estate, in its second amended complaint, identifies alleged negligent care of Ms. Torres in both the Hospital's emergency room and intensive care unit. In its briefing to this Court, however, the Estate makes no distinct argument related to the intensive care unit, and appears to merge the treatment that Ms. Torres received in the intensive care unit into its legal analysis of emergency room services.

negligence and vicarious liability. On June 23, 2015, the Estate filed a motion for summary judgment as to the Hospital, and on October 9, 2015, the Hospital filed its cross-motion for summary judgment as to the two counts asserted against it. On October 16, 2015, after a hearing on the motions, the trial court granted summary judgment for the Hospital, denying the Estate's antithetical motion.

After its motion for rehearing was denied, the Estate then sought leave to file a second amended complaint for the limited purposes of deleting the vicarious liability count and clarifying the Estate's non-delegable duty theories. At the hearing on this motion, counsel for the Estate conceded that its goal was to obtain a final, appealable order so that the Estate could bring before this Court the purely legal issue of whether the Hospital owed a non-delegable duty to Ms. Torres, i.e., whether the Hospital could be held liable for the alleged negligence of its independent contractors.

The trial court granted the motion, allowing the Estate to file a second amended complaint that, as to the Hospital, alleged only the four, alternate bases of liability described *infra*. The Hospital then moved to dismiss this second amended complaint with prejudice, which the trial court did on July 5, 2016. The Estate timely appealed.

## II. Analysis[6]

---

[6] Our standard of review of a ruling on a motion to dismiss for failure to state a cause of action is *de novo*. Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842

The Estate's Four Theories of Hospital Liability

Generally, a hospital is not liable for the negligence of a medical provider who works in the hospital as an independent contractor. See Pub. Health Tr. of Dade Cty. v. Valcin, 507 So. 2d 596, 601 (Fla. 1987). As the Fifth District has stated:

> When an independent contractor physician is hired . . . liability to third parties usually does not arise. This is because the law recognizes that a person ought to be able to hire someone to perform a specific task without exposure to liability to third parties for negligent performance of the work as long as the person doing the hiring does not retain control or direction over how the work is to be done.

Pope v. Winter Park Healthcare Grp., Ltd., 939 So. 2d 185, 187 (Fla. 5th DCA 2006). Courts do recognize exceptions to this rule: "Liability may attach . . . if: (1) the physician is an actual or apparent agent of the hospital; (2) *a statute, regulation, or contract creates a nondelegable duty*; or (3) the hospital failed to exercise due care in selecting the physician." Godwin v. Univ. of S. Fla. Bd. of Trs., 203 So. 3d 924, 929 (Fla. 2d DCA 2016) (emphasis added).

In its second amended complaint, the Estate alleged four, alternate theories of Hospital liability based on the premise that the Hospital's duty – "to provide all

So. 2d 204, 206 (Fla. 3d DCA 2003). When reviewing a final order dismissing a complaint, we, like the lower court, are required to accept as true all well pled factual allegations contained in the complaint; and thus, our determination of whether the complaint states a cause of action is based on a pure question of law. Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 734-35 (Fla. 2002),

5

emergency room, medical and surgical procedures and treatment" – to Ms. Torres could not be delegated to the Hospital's independent contractors and thereby relieve the Hospital of liability for any tortious conduct of the medical providers who treated Ms. Torres. Those theories, each expressed in a separate count of the second amended complaint, were: (1) statutory non-delegable duty, pursuant to chapter 395 of the Florida Statutes; (2) common law non-delegable duty; (3) express contractual non-delegable duty; and (4) implied contractual non-delegable duty.

Non-Delegable Duty Based on Express Contract and Common Law

We readily dispose of the assertions that the Hospital owed a non-delegable duty to Ms. Torres by virtue of an express contract (Count VII of plaintiff's second amended complaint), or that such a duty arose by virtue of common law (Count VIII of the second amended complaint). The Estate essentially concedes, and this Court does not quarrel with the conclusion, that no express contract was created between the Hospital and Ms. Torres. There is no allegation that Ms. Torres's father was authorized to execute the admission forms so as to bind Ms. Torres to any express contract that those forms might create.[7] Indeed, the Estate alleged this count "solely in the alternative in the event that the court concludes that the

_____

[7] See Mendez v. Hampton Court Nursing Ctr., LLC, 203 So. 3d 146, 148-51 (Fla. 2016) (holding that a nursing home resident was not bound by a contract signed by his son on either a third-party beneficiary or agency theory).

6

Emergency Forms are binding" on Ms. Torres. Because the record is devoid of any such conclusion, we need not further address this basis for imposing liability on the Hospital for its independent contractors.

We also dispose of the allegation that Florida common law imposes a non-delegable duty on the Hospital. The Estate does not appear to have carried this argument forward on appeal. See Starkey v. Chew, 241 So. 2d 870, 871 (Fla. 3d DCA 1970 ("The brief does not argue this assignment of error; it is therefore abandoned."). In any event, we reiterate without further elaboration that, contrary to the allegation in the second amended complaint, Florida common law does not impose a non-delegable duty upon hospitals to provide non-negligent care for its patients. See Pope, 939 So. 2d at 188. We affirm the trial court's dismissal of Counts VII and VIII of the Estate's second amended complaint.

The remaining counts asserting the basis for imposing a non-delegable duty on the Hospital are not so readily dispatched.

Non-Delegable Duty Based on Statute

In Count V of the second amended complaint, the Estate alleges that the Hospital had a non-delegable duty to provide non-negligent emergency room care to Ms. Torres based on sections 395.001 and 395.1041 of the Florida Statutes, and on several administrative rules promulgated pursuant to section 395.1055(1)(a). The Estate's specific reliance is upon section 395.1041, which provides, among

7

other things, certain guidelines for hospital emergency treatment. See §
395.1041(3), Fla. Stat. (2013).

The Estate argues that these statutory provisions (related to hospital
emergency treatment) are analogous to those provisions in chapter 395 related to
hospital anesthesia care. Consequently, the Estate suggests, this Court should
conclude that chapter 395 imposes the same non-delegable duties that the Fourth
District concluded apply to hospital anesthesia care in Wax v. Tenet Health System
Hospitals, Inc., 955 So. 2d 1, 9 (Fla. 4th DCA 2007).

In Wax, a patient's surviving spouse brought a wrongful death medical
malpractice action against a hospital for, among other things, the alleged
negligence of an anesthesiologist who was an independent contractor of the
hospital. Id. at 3. Wax argued that section 395.002(13)(b) (subsequently re-
numbered) defines a hospital as an establishment that makes available surgical
treatment facilities; and further, that sections 395.1055(1)(a) and (d) require
Florida's Agency for Health Care Administration (AHCA) to establish rules[8] for
safe patient care at State-licensed facilities. Id. at 8. Wax argued that this statutory
scheme imposed on the hospital a legal duty to provide safe anesthesia services
consistent with AHCA standards. The Fourth District agreed and concluded that,

---

[8] The Court cited Florida Administrative Code Rule 59A-3.2085(4) – now repealed
and replaced by rule 59A-3.245(2) – that provided, in pertinent part, that a hospital
"shall have an anesthesia department . . . directed by a physician member of the
organized professional staff."

8

based on statute and regulation, the hospital had "a clearly established legal duty to furnish non-negligent anesthesia services." Id. at 9.[9]

While the statutes relied upon by the Estate in this case indeed are similar to those forming the basis of the non-delegable created by the Wax court, we find ourselves more aligned with the Second District in concluding that "Chapter 395 regulates hospitals and addresses standards governing hospitals, not standards applicable to the practice of medicine . . . ." Tarpon Springs Hosp. Found., Inc. v. Reth, 40 So. 3d 823, 828 (Fla. 2d DCA 2010). In certifying conflict with Wax, Tarpon Springs – another non-delegable duty case involving negligent anesthesia services – determined that the relevant statutes impose a duty on hospitals "to ensure that [anesthesia] services are available and provided by competent personnel," but do not impose upon hospitals "the duty to provide anesthesia services nonnegligently to a patient in a given instance." Id.

We agree with the Tarpon Springs court. Chapter 395 of the Florida Statutes is a public health and safety law designed to establish criteria for hospital licensure and operations. See § 395.001, Fla. Stat. (2013). We do not view the

---

[9] In Kristensen-Kepler v. Cooney, 39 So. 3d 518 (Fla. 4th DCA 2010), the Fourth District determined that a surgical center did not owe a duty to a patient to provide non-negligent anesthesia services. The Fourth District distinguished Wax by noting that the patient in Kristensen-Kepler (unlike the patient in Wax) selected the anesthesiologist. Id. at 520. Whether a patient has the ability to select his or her physician is a factor in the Fourth District's view of non-delegable duty with respect to a hospital's emergency room, discussed *infra.*

9

relied-upon statutes as imposing on hospitals a non-delegable duty to provide non-negligent emergency room care, and we are not inclined to infer one. See Murthy v. N. Sinha Corp., 644 So. 2d 983, 986 (Fla. 1994).

We affirm the trial court's dismissal of Count V of the Estate's second amended complaint and align ourselves with the Second District in Tarpon Springs. Accordingly, recognizing the split in the District Courts, we certify conflict with Wax v. Tenet Health System Hospitals, Inc.

Non-Delegable Duty Based on Implied Contract

Finally, we address the Estate's claim in Count VI that Ms. Torres's admission to the Hospital's emergency room established an implied contractual relationship between the Hospital and her; and the resulting implied contract imposed upon the Hospital a contractually created non-delegable duty such that the Hospital became responsible for the alleged negligence of Ms. Torres's medical providers.

Under certain circumstances, parties' conduct can create an implied-in-fact contract, in which their assent to a contractual relationship is inferred. See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., 695 So. 2d 383, 385 (Fla. 4th DCA 1997).[10]  Florida, however, generally does not recognize an implied

---

[10] Because the trial court dismissed the second amended complaint, the factual issue of whether Ms. Torres was incapacitated upon her admission to the Hospital was never determined. Given our holding that, as a matter of law, an implied

10

contractual relationship between patient and hospital that would trigger a non-delegable duty and impose liability on the hospital for the negligence of its independent contractors. See e.g., Godwin, 203 So. 3d at 931; Tarpon Springs 40 So. 3d at 827; Pope, 939 So. 2d at 187.

The Fourth District, though, has rejected – and the Estate now urges us to reject – this prevailing view in the emergency room context. Our sister court views the role of an emergency room as distinctive, imposing an implied contract on Florida hospitals and their emergency room patients and effectively creating a rule of hospital liability for independent contractor negligence that occurs in an emergency room. The case of Irving v. Doctors Hospital of Lake Worth, Inc., 415 So. 2d 55 (Fla. 4th DCA 1982), involved potential hospital liability for the alleged negligence of an emergency room physician. A jury found no liability on the part of the hospital. On appeal, the Fourth District found error in the jury instructions, specifically the failure of the trial court to instruct the jury "that one may not escape his contractual liability by delegating performance under a contract to an independent contractor." Id. at 59. Perhaps diverted by the integral relationship of the emergency room and its hospital, or by the view that patients generally have no choice in selecting their emergency room doctors, the Fourth District in Irving

contract did not form between the Hospital and Ms. Torres, this factual issue is irrelevant. We need not, and therefore do not, reach the issue of whether an incapacitated person upon admission to an emergency room can assent to a contractual relationship.

11

appears to have carved an emergency room exception to the general rule that hospitals are not liable for negligent acts performed by independent contractors. Id. at 56.

The Irving decision laid a path to Newbold-Ferguson v. Amisub (N. Ridge Hospital), Inc., 85 So. 3d 502 (Fla 4th DCA 2012). In Newbold-Ferguson, the plaintiff personal representative of an estate sought to amend her complaint to allege the liability of the hospital for the negligent acts and omissions of an emergency room physician. Id. at 503. The trial court refused to allow the amendment, finding that no duty existed that was attributable to the hospital. Id. at 504. The case proceeded to trial and resulted in a jury verdict for the hospital. Id.

In reversing the verdict in favor of the hospital, the Fourth District stated:

> Irving establishes that a hospital which provides emergency room services has a non-delegable duty to provide competent emergency treatment based upon an implied contract. It is therefore clear that the plaintiff could have pleaded a claim against the hospital for the emergency room doctor's negligence on a non-delegable duty theory. The imposition of a non-delegable duty to provide competent emergency room services makes sense, because a patient in an emergency room generally has little, if any, control over who will be the treating physician.

Id. at 505.

We read our sister court's precedent as creating, as a matter of law, an implied contract between hospitals and their emergency room patients. Accordingly, under Irving and its progeny, this judicially imposed implied contract

12

requires a hospital to provide emergency room patients with non-negligent emergency room care so that, contrary to the general rule of non-liability, the hospital is responsible for the negligence of independent contractors hired by the hospital to provide emergency room medical services.[11] The Estate urges us to take a similar approach.

We decline the Estate's invitation. While we recognize that chapter 395 of the Florida Statutes obligates Florida hospitals to provide emergency room services to the public, we note that the statutory scheme is *silent* on the matter of non-delegable duty. We believe that expanding Florida hospital liability to include liability for those emergency room medical providers who are hired by hospitals as independent contractors is a public policy decision that is within the purview of Florida's legislative branch. Or, to the extent the issue is one of common law, it calls for a Florida Supreme Court decision. We simply are averse to expanding, by judicial dictate, the liability of Florida hospitals, as the Estate urges.

Accordingly, we affirm the trial court's dismissal of Count V of the Estate's second amended complaint and we certify conflict with Irving v. Doctors Hospital of Lake Worth, Inc. and Newbold-Ferguson v. Amisub (North Ridge Hospital), Inc. **III. Conclusion**

---

[11] In *dicta*, two decisions of this Court have cited uncritically to Irving: Cedars Medical Center, Inc. v. Ravelo, 738 So. 2d 362, 366 n.1 (Fla. 3d DCA 1999), and Jaar v. University of Miami, 474 So. 2d 239, 243 (Fla. 3d DCA 1985).

We affirm the trial court's dismissal of the counts against the Hospital alleged in the Estate's second amended complaint. The Hospital owed no non-delegable duty to Ms. Torres such that the Hospital would have liability for the alleged negligent acts of emergency room medical providers who were independent contractors of the Hospital. Despite the urging of the Estate, we decline to expand hospital liability by concluding that a non-delegable duty – to provide non-negligent care to emergency room patients – arises either by virtue of (i) chapter 395 of the Florida Statutes, or (ii) an implied contract between hospitals and their emergency room patients.

Affirmed; conflicts certified.